J-S10027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GREGORY LITTLEJOHN | : | |
| | : | |
| Appellant | : | No. 1248 WDA 2023 |

Appeal from the Judgment of Sentence Entered September 18, 2023
In the Court of Common Pleas of Mercer County
Criminal Division at No(s):  CP-43-CR-0001528-2021

BEFORE:  OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:                         **FILED: September 13, 2024**

Appellant, Gregory Littlejohn, appeals from the judgment of sentence entered in the Mercer County Court of Common Pleas, following his no-contest plea to possession of a firearm prohibited.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On the evening of December 7, 2021, Pennsylvania State Police Trooper Gary Knott[2] was patrolling eastbound traffic on I-80, when he observed a black car with a New York license plate driving in the left lane, with no headlights, and with very dark tinted windows.

---

[1] 18 Pa.C.S.A. § 6105.

[2] Trooper Knott was part of the Safe Highways Initiative through Effective Law Enforcement and Detection ("SHIELD") unit, under the drug law enforcement division.  Trooper Knott had been a part of the SHIELD unit for eight years, and had significant specialized training in drug specific highway interdiction.

Trooper Knott performed a routine traffic stop for these violations of the vehicle code. When Trooper Knott approached the passenger side of the vehicle, Appellant partially lowered the window and Trooper Knott observed that Appellant was on a video call on Facetime. Trooper Knott smelled a strong odor of fresh green raw marijuana and had to ask Appellant twice to put the window all the way down.

Appellant told Trooper Knott that he was from Brooklyn, New York, and was returning from his grandfather's funeral in Milwaukee, Wisconsin. Appellant also stated that he was driving his wife's car, and Appellant showed the officer insurance cards that he alleged provided his wife's name. Trooper Knott then leaned into the vehicle to better hear Appellant and to view documents that Appellant was showing him.

Trooper Knott indicated that he wanted to investigate further based on Appellant's presentation of a New York driver's license and the odor of marijuana. Trooper Knott told Appellant that he intended to check his license and asked Appellant to exit the vehicle for the purpose of facilitating communication and for officer safety. The Trooper indicated that the safest possible location for anybody to be in during a traffic stop is the front seat of a police vehicle.

When Trooper Knott asked Appellant to exit the vehicle, Appellant became agitated. Eventually, however, Appellant exited the vehicle. Trooper Knott was concerned that Appellant had a weapon and patted him down for

officer safety. The pat down revealed no weapons, and Appellant then sat in the passenger seat of the police cruiser. Trooper Knott ran Appellant's license and learned that Appellant was a known gang member with a criminal history in two states. Trooper Knott used his computer to call for backup, and was soon joined by his supervisor, Corporal Reed Grenci. Corporal Grenci stood outside the passenger door of the police cruiser and took part in the conversation with Appellant.

Trooper Knott asked Appellant for consent to search the vehicle and explained that if the marijuana was the only thing discovered, it would be sent to the lab and Appellant would be released. Appellant then called his mother and discussed his options regarding the search. During the phone call, the trooper overheard Appellant's mother ask if Appellant had a gun in the car and noticed that Appellant became agitated with his mother. After Corporal Grenci told Appellant that if he did not consent to the search he would be detained up to three hours while the troopers obtained a search warrant, Appellant verbally consented to the search. Corporal Grenci conducted the search of the vehicle and discovered a gun and magazine in the center console, as well as a bag of marijuana and related paraphernalia.

Appellant was then read his **Miranda**[3] warnings and requested an attorney. Although the officers stopped questioning him, during transport to

---

[3] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the barracks, Appellant continually asked questions regarding his punishment, penalties, and possible charges. Appellant also made an unsolicited statement that he did not do anything illegal with the gun that was found.

On December 8, 2021, the Commonwealth charged Appellant with possession of a firearm prohibited, possession of a firearm without a license, possession of marijuana, possession of drug paraphernalia, and related summary offenses. On May 24, 2022, Appellant filed an omnibus pretrial motion, which sought, *inter alia*, suppression of the evidence related to the traffic stop and the statements he made thereafter. The Commonwealth filed a motion to quash Appellant's suppression motion as untimely. The trial court conducted a suppression hearing on June 7, 2022, after which it directed the parties to file supplemental briefs.

On January 18, 2023, the trial court entered an order which denied the Commonwealth's motion to quash, finding that the pre-trial motion was filed promptly after counsel was retained by Appellant and any delay did not adversely affect the Commonwealth. The court granted in part and denied in part Appellant's motion to suppress. Specifically, the court found that based on the totality of the circumstances after the initial stop, Trooper Knott had the authority to detain Appellant for an investigative search. The court found that Trooper Knott's actions of leaning into the vehicle to view the documents and better hear Appellant was not an improper search of the vehicle. Nevertheless, the court found that Trooper Knott did not have reasonable

- 4 -

suspicion that Appellant was armed and dangerous, and therefore decided that the initial frisk was improper and without justification. However, because nothing was obtained from Appellant's person which could be suppressed, the court found the improper search irrelevant. The trial court also stated that the duration of the stop was appropriate based on the progression of the initial stop and investigatory detention.

The court further determined that Appellant was in custody and not given his *Miranda* warnings before he was questioned while seated in the front seat of the police cruiser, such that suppression of his statements to police was proper. Nevertheless, the court found that Appellant was not entitled to suppression of the evidence seized from the vehicle based on Appellant's consent and the fact that such evidence would have been inevitably discovered by a search warrant had Appellant not consented.

On January 31, 2023, Appellant filed a motion to reconsider the denial of the motion to suppress evidence from the search. On February 14, 2023, the Commonwealth filed a motion to reconsider the portion of the court's order granting Appellant's motion to suppress statements. On June 20, 2023, the trial court denied both motions to reconsider.

On September 18, 2023, Appellant pled no-contest to one count of possession of firearm prohibited. As part of his plea, Appellant retained the

right to appeal the denial of his motion to suppress evidence.[4]  Appellant filed

a timely notice of appeal on October 17, 2023.  Pursuant to the trial court's

order, Appellant filed a concise statement of errors complained of on appeal

per Pa.R.A.P. 1925(b) on October 26, 2023.

Appellant raises the following issues for our review:

> 1. Did the trial court [err] in denying Appellant's motion to suppress evidence as the duration of the traffic stop was unreasonably extended.
>
> 2. Did the trial court erred in denying Appellant's motion to suppress evidence based [on] the inevitable discovery doctrine.

(Appellant's Brief at 7) (unnecessary capitalization omitted).

In his first issue, Appellant argues that the trial court erred when it found

that the trooper had reasonable suspicion to conduct an investigative

detention.  Appellant concedes that the initial traffic stop was valid; however,

he claims that the officer prolonged the traffic stop beyond the time

_____

[4] Generally, once a defendant enters a plea, he waives the right to appeal all pre-trial issues such as suppression.  **Commonwealth v. Singleton**, 169 A.3d 79, 81 (Pa.Super. 2017), *appeal denied*, 645 Pa. 571, 181 A.3d 1080 (2018) (stating "it is well-established that [a] plea of guilty constitutes a waiver of all nonjurisdictional defects and defenses and waives the right to challenge anything but the legality of [the] sentence and the validity of [the] plea") (citation and internal quotation marks omitted).  Here, the court issued an order on November 16, 2023, which explicitly stated that Appellant's plea was "a conditional plea permitting [Appellant] to retain his appellate rights regarding any suppression issues."  (Trial Court Order, filed 11/16/23, at 2).  Thus, Appellant preserved his appellate rights concerning the motion to suppress despite having entered a plea.  **See Singleton, supra** at 81-82 (reviewing merits of suppression issue where trial court accepted conditional agreement reserving right to appeal denial of suppression motion).

reasonably required. Appellant insists that the 23-minute duration of the traffic stop, on its face, exceeded the acceptable and normal time limits to issue a traffic ticket or warning. Appellant contends the trial court erred when it concluded that he was not subject to an unconstitutional seizure because of the prolonged detention.

Alternatively, if the duration of the stop was not itself unreasonable, Appellant claims that the officers lacked reasonable suspicion to seize him in the first place. Appellant argues that the smell of marijuana alone does not establish reasonable suspicion, as the trooper never asked whether Appellant had a medical marijuana card. Appellant also maintains that the fact that he was directed twice to roll down the window was reasonable as it was chilly outside. Additionally, Appellant insists that the fact that he was driving on a known drug corridor, alone, does not establish reasonable suspicion, especially where Appellant challenges the trooper's statements that Appellant was acting agitated. Appellant further posits that none of his statements supplied evidence that criminal activity was afoot. Appellant concludes that the suppression court erred in finding that Trooper Knott had reasonable suspicion to effectuate an investigatory detention, and this Court must grant relief. We disagree.

> Our standard of review of a trial court's ruling on a suppression motion is "whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Rosario*, 248 A.3d 599, 607 (Pa.Super. 2021). We are bound by the facts found by the trial court so long as they

- 7 -

are supported by the record, but we review its legal conclusions *de novo*. ***Id.*** at 607-08. The trial court has sole authority to pass on the credibility of witnesses and the weight to be given to their testimony. ***Id.*** at 608. "Our scope of review is limited to the record developed at the suppression hearing, considering the evidence presented by the Commonwealth as the prevailing party and any uncontradicted evidence presented by the defendant." ***Commonwealth v. Kane***, 210 A.3d 324, 329 (Pa.Super. 2019).

***Commonwealth v. Rivera***, 316 A.3d 1026, 1031 (Pa.Super. 2024).

"'Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures.'" ***Commonwealth v. Newsome***, 170 A.3d 1151, 1154 (Pa.Super. 2017) (quoting ***Commonwealth v. Bostick***, 958 A.2d 543, 550 (Pa.Super. 2008), *appeal denied*, 604 Pa. 702, 987 A.2d 158 (2009)). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." ***Id.*** (citation omitted). Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Bryant***, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005) (quoting ***Commonwealth v. Phinn***, 761 A.2d 176, 181 (Pa.Super. 2000)).

> Generally, a motor vehicle stop is an investigative detention. ***See Commonwealth v. Spence***, 290 A.3d 301, 314 (Pa.Super. 2023). "[A]n investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest." ***Id.*** (citation omitted). "Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity." ***Id.*** (citation omitted).

***Commonwealth v. Ross***, 297 A.3d 787, 792 (Pa.Super. 2023).

"[T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity." ***Commonwealth v. Cottman***, 764 A.2d 595, 598-99 (Pa.Super. 2000) (quoting ***Commonwealth v. Beasley***, 761 A.2d 621, 625 (Pa.Super. 2000)). "These circumstances are to be viewed through the eyes of a trained officer, not an ordinary citizen." ***Commonwealth v. Jackson***, 907 A.2d 540, 543 (Pa.Super. 2006), *appeal denied*, 593 Pa. 754, 932 A.2d 75 (2007). "In making this determination, we must give due weight…to the specific reasonable inferences [the officer] is entitled to draw from the facts in light of his experience." ***Commonwealth v. Young***, 904 A.2d 947, 957 (Pa.Super.

- 9 -

2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (2006) (internal citation and quotation marks omitted).

> In the context of a traffic stop, the United States Supreme Court held that the duration of police inquiries "is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop...and attend to related safety concerns." [**Rodriguez v. United States**, 575 U.S. 348, 354, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015)] (citations omitted). A stop becomes unlawful when it "last[s]...longer than is necessary" to complete its mission, the rationale being that the "[a]uthority for the seizure...ends when tasks tied to the traffic infraction are— or reasonably should have been—completed." **Id.** (citations omitted).

**Ross, supra** at 792. "[A]n officer's mission includes ordinary inquiries incident to the traffic stop" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." **Rodriguez, supra** at 355, 135 S.Ct. at 1615 (quotation marks, citation, and brackets omitted). When a trooper abandons the investigation of the underlying violation and begins questioning the driver about unrelated criminal activity, he effectively ends the traffic stop and initiates an independent investigative detention, which requires independent reasonable suspicion. **Commonwealth v. Mattis**, 252 A.3d 650, 656 (Pa.Super. 2021).

We further note that following the passage of the Medical Marijuana Act ("MMA"), our Supreme Court has recognized that "marijuana no longer is *per se* illegal in this Commonwealth" for those who "compl[y] with the dictates of the MMA." **Commonwealth v. Barr**, ___ Pa. ___, ___, 266 A.3d 25, 41

- 10 -

(2021). The Court in **Barr** held that "the odor of marijuana alone does not amount to probable cause to conduct a warrantless search of a vehicle but, rather, may be considered as a factor in examining the totality of the circumstances." **Id.** at ____, 266 A.3d at 44. Similarly, this Court has explained that **Barr** applies to a determination of reasonable suspicion for an investigative detention. **Commonwealth v. Cunningham**, 287 A.3d 1, 9 (Pa.Super. 2022), *appeal denied*, ___ Pa. ___, 302 A.3d 626 (2023). Although the smell of fresh raw marijuana cannot on its own establish reasonable suspicion, an officer may consider the odor of raw marijuana, as well as other factors, in making that determination. **See id.**

Instantly, the trial court found that while Trooper Knott was investigating the initial traffic violation, additional reasonable suspicion arose which justified a continued detention to investigate the new suspicions. Specifically, the court noted that Appellant was reluctant to roll down his window to allow Trooper Knott to see into the vehicle; once the window was open, the trooper was able to smell fresh, green, raw marijuana; Appellant was traveling on a known drug corridor, with a residence in Brooklyn, a known drug destination; and Appellant was driving in a vehicle not registered to himself,[5] which Trooper Knott believed was typical of somebody engaged in

_____

[5] We note that the Commonwealth did not argue at the suppression hearing that Appellant lacked a reasonable expectation of privacy in the vehicle, and the trial court did not discuss whether Appellant had a reasonable expectation
*(Footnote Continued Next Page)*

criminal activity based on the trooper's specialized training and experience in drug enforcement. The court concluded that the totality of these circumstances gave rise to Trooper Knott's authority to detain Appellant beyond the initial traffic stop for an investigatory search. (**See** Trial Court Opinion, filed 1/18/23, at 10-11).

With respect to the duration of the stop, the trial court explained:

> As previously discussed, Trooper Knott possessed the requisite [reasonable suspicion] to detain [Appellant] for an investigatory stop prior to asking [Appellant] to get out of his vehicle. Trooper Knott then allowed [Appellant] to sit in the front seat of the police cruiser as Trooper Knott searched [Appellant's] information in the police computer system. Upon the appearance of two cautionary flags, one indicating [Appellant] was a gang member and one indicating [Appellant] had a criminal history in two different states, Trooper Knott alerted another officer for backup via the computer in his police cruiser. It was at this point Trooper Knott first asked [Appellant] for permission to search his vehicle whereby the rest of [Appellant] and Trooper Knott's interaction was geared toward the manner in which [Appellant's] vehicle would be searched contingent on [Appellant's] decision whether to consent to a vehicle search or not. Under the circumstances, the duration of the stop is appropriate.

(**Id.** at 13) (record citation omitted).

We agree with the trial court's conclusions. The record reveals that

---

of privacy in the vehicle in its opinion. **See Commonwealth v. Peak**, 230 A.3d 1220, 1224 (Pa.Super. 2020, *cert. denied*, ___ U.S. ___, 141 S.Ct. 1426, 209 L.Ed.2d 150 (2021) (stating Commonwealth did not make argument regarding Appellant's reasonable expectation of privacy in vehicle during suppression hearing; for that reason, trial court did not address Appellant's expectation of privacy, or lack thereof, in its opinion, and this Court could consider issue waived on appeal).

during the initial traffic stop, Trooper Knott obtained basic identifying information from Appellant. The trooper returned to his police cruiser to check Appellant's license and determine whether there were outstanding warrants against Appellant, and to inspect the automobile's registration and proof of insurance. This investigation is within the initial stop's mission and is permitted. **See Rodriguez, supra**; **Ross, supra**. After obtaining Appellant's identifying information, the trooper ascertained that Appellant had a New York driver's license and was driving a vehicle registered in New York. As the MMA applies only to Pennsylvania residents, these factors reasonably suggest that Appellant could not possess marijuana pursuant to the MMA. **See** 35 P.S. §§ 10231.103 (defining "patient" under MMA as individual who has serious medical condition, has met requirements for certification under act, and is resident of Pennsylvania). **See also Commonwealth v. Jefferson**, 315 A.3d 55, 2024 WL 457727 (Pa.Super. 2024) (unpublished memorandum),[6] *appeal denied*, No. 131 MAL 2024, 2024 WL 3337465 (Pa. July 9, 2024) (explaining that MMA limits lawful possession of marijuana to Pennsylvania residents; because appellant was not Pennsylvania resident, appellant could not possess marijuana pursuant to MMA).[7] Based on the totality of the circumstances

_____

[6] **See** Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

[7] Appellant makes no argument that any potential authorization to possess medical marijuana under New York law deprived the trooper of reasonable
*(Footnote Continued Next Page)*

- 13 -

observed by Trooper Knott after the initial stop, we agree with the trial court that the trooper had reasonable suspicion to conduct an investigatory detention, and to prolong the initial traffic stop to do so. *See Young, supra*; *Cottman, supra*. Thus, Appellant's first issue is meritless.

In his second issue, Appellant argues that the court erred in its application of the inevitable discovery doctrine. Specifically, Appellant claims that neither his consent nor a possible warrant were sufficient to justify the search, and the record is devoid of any suggestion of an alternative justification that would have permitted the officers to search the vehicle in the absence of Appellant's statements, which the trial court suppressed. Appellant insists that the troopers lacked any lawful basis to conduct a warrantless search of Appellant's vehicle, and this Court must grant relief. We disagree.

In general, "a warrant stating probable cause is required before a police officer may search for or seize evidence" unless an exception to the warrant requirement applies. *Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa.Super. 2012). As applied to vehicle searches, Pennsylvania law requires police to have a warrant unless probable cause and exigent circumstances exist. *Commonwealth v. Alexander*, 664 Pa. 145, 151, 243 A.3d 177, 181 (2020). "Absent the application of one of a few clearly delineated exceptions,

---

suspicion, or that Pennsylvania must give full faith and credit to an out-of-state authorization. Thus, we do not consider any claims to that effect. *See id.* at *4 n.3.

a warrantless search or seizure is presumptively unreasonable."
***Commonwealth v. Gray***, 211 A.3d 1253, 1260 (Pa.Super. 2019) (citation omitted).

One exception to the warrant requirement is voluntary consent. ***Commonwealth v. Strickler***, 563 Pa. 47, 56, 757 A.2d 884, 888 (2000). "The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent." ***Id.*** "Where…a consensual search has been preceded by an unlawful seizure, the exclusionary rule requires suppression of the evidence obtained absent a demonstration by the government both of a sufficient break in the causal chain between the illegality and the seizure of evidence, thus assuring that the search is not an exploitation of the prior illegality, and of voluntariness." ***Id.*** at 57, 757 A.2d at 889.

Further, the inevitable discovery doctrine provides that evidence seized without a warrant will not be suppressed where the Commonwealth shows by a "preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means[.]" ***Commonwealth v. King***, 259 A.3d 511, 522 (Pa.Super. 2021) (citation omitted). In reviewing the affidavit alleging probable cause to support a search warrant, "[t]he task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set

forth in the affidavit before him…there is a fair probability that contraband or evidence of a crime will be found in a particular place." ***Commonwealth v. Mendoza***, 287 A.3d 457, 462 (Pa.Super. 2022), *appeal denied*, ___ Pa. ___, 303 A.3d 1053 (2023) (quoting ***Illinois v. Gates***, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "Probable cause does not demand the certainty we associate with formal trials. Rather, a determination of probable cause requires only that the totality of the circumstances demonstrates a fair probability that contraband or evidence of a crime will be found in a particular place." ***Commonwealth v. Scott***, 210 A.3d 359, 363 (Pa.Super. 2019) (quoting ***Commonwealth v. Manuel***, 194 A.3d 1076, 1081 (Pa.Super. 2018) (*en banc*)).

In ***Commonwealth v. Boyd***, 296 A.3d 1270 (Pa.Super. 2023), this Court found there was probable cause to support a search warrant where the officer, who was experienced in narcotics training, noticed that the defendant was nervous, the car had multiple air fresheners masking the smell of marijuana, and the defendant did not have a medical marijuana card. Although no one factor was dispositive, this Court concluded that when considered together, the totality of the facts "create[d] sufficient suspicion of criminal activity to create probable cause to search for contraband." ***Id.*** at 1278.

Instantly, the trial court found that Trooper Knott would have inevitably discovered the loaded gun, marijuana, and drug paraphernalia pursuant to a

- 16 -

search warrant had Appellant not consented to the search. At the suppression hearing, Trooper Knott testified that he intended to apply for a search warrant, and indeed explained to Appellant the process, and time that it would take, for him to do so. The trial court found that the troopers would have been able to present evidence sufficient to demonstrate that contraband or evidence of a crime would be found in the vehicle which Appellant was driving. Specifically, if Trooper Knott had applied for a search warrant, he would have sworn that: 1) he detected the odor of raw green marijuana coming from the vehicle, 2) Appellant presented a New York driver's license, and only Pennsylvania residents may possess a valid medical marijuana card, 3) Appellant was traveling on a known drug corridor and was from a known drug destination, 4) Appellant's criminal history showed that he was a gang member and had prior arrests in two states, and 5) Appellant did not comply with Trooper Knott's directions during the traffic stop.

We agree with the trial court that the totality of the facts created probable cause to search such that the troopers would have obtained a search warrant in the absence of Appellant's consent to search. *See id. See also Mendoza, supra*. Because the record supports the court's finding that the troopers would have been able to establish probable cause necessary to obtain a search warrant, we need not decide whether Appellant's consent to search was valid because we agree with the trial court that the evidence would have been inevitably discovered pursuant to a lawful search warrant. *See King,*

*supra*. Therefore, Appellant's second issue does not merit relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 09/13/2024