J-S13044-23

2023 PA Super 109

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                            :         PENNSYLVANIA
                                            :
                   v.                       :
                                            :
                                            :
                                            :
JONATHAN BOYD                         :
                                            :
                   Appellant            :  No. 2642 EDA 2022

Appeal from the Judgment of Sentence Entered September 27, 2022
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0004420-2021

BEFORE:  NICHOLS, J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED JUNE 13, 2023**

Appellant, Jonathan Boyd, appeals from the judgment of sentence entered in the Court of Common Pleas of Bucks County after the trial court, presiding over Appellant's stipulated waiver trial, found Appellant guilty of possessing a firearm while being a person not to possess,[1] carrying a firearm without a license,[2] possession of a small amount of marijuana,[3] possession of drug paraphernalia,[4] operating a vehicle without a valid inspection,[5] and improper sun screening.[6]  Herein, Appellant challenges the trial court's order denying his motion to suppress physical evidence obtained through the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §  6105(a)(1).
[2] 18 Pa.C.S. § 6106(a)(1).
[3] 35 Pa.C.S. § 780-113(a)(31)(i).
[4] 35 Pa.C.S. § 780-113(a)(32).
[5] 75 Pa.C.S. § 4703(a).
[6] 75 Pa.C.S. § 4524(e)(1).

execution of a search warrant on a vehicle in his control at the time. We affirm.

The trial court sets forth the relevant facts and procedural history, as follows:

[On July 28, 2021, a criminal complaint was filed against Appellant charging him with the above-referenced offenses stemming from the search of his vehicle.] On December 29, 2021, Appellant filed a Motion to Suppress Physical Evidence, challenging the legality of a traffic stop and the sufficiency of a search warrant subsequently issued pursuant to that stop.

On June 21, 2022, [the trial court] denied Appellant's Motion to Suppress and made the following findings of fact and conclusions of law:

We heard from [the affiant,] Officer Francis Ludovici with the Bensalem Township Police Department[,] who has been a police officer for approximately five [years], [with the last two and a half years spent] with Bensalem Township. Officer Ludovici has an extensive history including military service, making him familiar with firearms. He's also familiar with drug cases and drug interdiction cases, having received training in that regard as well.

On July 25, 2021, Officer Ludovici was working the 7:00 a.m. to 7:00 p.m. shift. He was in uniform in a marked police vehicle in Bensalem Township, Bucks County. At approximately 10:30 a.m. on Route 1 between Knights Inn and the Comfort Inn in Bensalem, he noticed a silver Chrysler sedan with dark windows. He believed the tint exceeded the legal limits. He also believed that the inspection stickers appeared to be counterfeit. His initial reaction was that the color [of the inspection stickers] was off. The stickers, even though he [only] had a brief period of time to view them, [were] close enough [for Officer Ludovici] to make that distinction.

He pulled behind the vehicle and initiated a traffic stop. He approached the passenger's side and noticed there were two occupants in the vehicle. However, before noticing the two occupants, he directed that the driver lower the windows so that he could see inside the vehicle.

[Officer Ludovici] identified [Appellant] as the operator of the vehicle. He requested identification and information from [Appellant]. [Appellant] was able to provide his operator's license [and] proof of insurance. It should be noted that throughout the stop, [Appellant] was on the phone trying to retrieve . . . his insurance information . . . .

Officer Ludovici does not recall if [Appellant] provided him with the necessary registration paperwork. However, he was able to subsequently learn that the vehicle was registered to [Appellant].

At all times relevant to the car stop, the Officer's body cam had been activated and was admitted as C-1.

[Officer Ludovici] testified that at the time [Appellant] appeared nervous. He also testified that he noticed numerous air fresheners in the vehicle, and, based upon his experience, those air fresheners are common to mask the odor of narcotics. He believed he noticed the odor of marijuana. [Appellant] admitted to having smoked marijuana previously, but [he] did not have— or claimed to have not been smoking—marijuana in the vehicle or recently. He did not have a medical marijuana card.

During the stop, [Officer Ludovici] noticed a [gun] holster in the backseat of the vehicle. He was concerned for his safety and requested another officer to keep an eye on the vehicle and its occupants while he contacted the radio room for additional information. He inquired whether [Appellant] was permitted to carry a firearm. He learned he was not. He also learned that [Appellant] had a prior conviction for aggravated assault.

- 3 -

[Appellant] was asked to step outside of the vehicle and agreed to do so. He was asked if there was a firearm in the vehicle. [Appellant] said no and subsequently granted consent to search the interior of the vehicle. After searching the interior of the vehicle, Officer Ludovici then opened the trunk of the vehicle. At that moment, [Appellant] withdrew consent, and the officer, without hesitation, closed the trunk and did not conduct any further search of the vehicle. He told [Appellant] the reason for this was he believed a weapon came with the holster and was concerned about a weapon in the vehicle.

[Officer Ludovici also explained] that he, upon further examination of the inspection sticker, noticed it was counterfeit based upon its color, font size of the numbers, the Keystone symbol was not accurate, and the emissions sticker had eleven numbers instead of ten, and the back of the sticker was not filled out, and there was no inspection station number.

It was determined that those numbers had never been issued, leading the Officer to conclude it was a counterfeit sticker. He also used a light meter on the tinted windows and was able to determine that only 18% of the light passes through the windows, and 70% would be required for inspection.

Bensalem Township has a policy for the impoundment of vehicles. . . . [It states,] "Administrative traffic impoundment duty tow storage lot includes impoundment of a motor vehicle for certain offenses including . . . the vehicle is not properly registered and/or insured[.] The vehicle administratively impounded may be towed to the duty tow lot or in the stored facility if need dictates."

[Appellant] indicated earlier he was unable to provide proof of insurance or that the vehicle was properly insured or registered pursuant to the administrative policy of Bensalem Township Police Department—or Bensalem Township. Therefore, the vehicle in question was towed pursuant to the administrative

- 4 -

> traffic and impoundment policy and taken to the police storage facility.
>
> Officer Ludovici determined after having the vehicle impounded that he would apply for a search warrant, and a search warrant was obtained from Magisterial District Judge Petrucci. The search warrant was admitted as Commonwealth's Exhibit 4, and a search of the vehicle was executed.

Trial Court Opinion, 12/22/22, at 1-3.

On June 21, 2022, immediately after the trial court denied Appellant's Motion to Suppress, Appellant proceeded to a stipulated waiver trial and was found guilty of all charges except operating a motor vehicle without required financial responsibility. On September 27, 2022, Appellant was sentenced to a downward departure sentence of not less than three months to no more than 23 months of incarceration, with a concurrent county probationary period of five years. This timely appeal followed.

Appellant presents the following questions for this Court's consideration:

1. Was the search warrant for the search of Appellant's motor vehicle issued without probable cause or other legal justification in violation of the constitutions of the United States and of the Commonwealth of Pennsylvania and did the trial court err in denying Appellant's motion to suppress evidence?

2. Did the trial court err in concluding that the inevitable discovery doctrine applied to the facts of this case?

Brief for Appellant, at 4.

We begin by setting forth our standard of review of a challenge to an order denying a motion to suppress. "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance

of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047-1048 (Pa. 2012); ***see also*** Pa.R.Crim.P. 581(H) (stating, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights"). Our standard of review for an order denying a motion to suppress is well-established.

> [We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the [suppression] court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [suppression court] are subject to our plenary review.

***Commonwealth v. Mbewe***, 203 A.3d 983, 986 (Pa. Super. 2019) (quotation marks omitted), *quoting* ***Commonwealth v. Kemp***, 195 A.3d 269, 275 (Pa. Super. 2018).

> Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures by police in areas where individuals have a reasonable expectation of privacy."[] ***Commonwealth v. Loughnane***, 643 Pa. 408, 173 A.3d 733, 741 (2017). If a person has a reasonable expectation of privacy in a place, then these constitutional

provisions generally require police to obtain a warrant to search the place; a search warrant must be supported by probable cause and issued by a neutral, detached magistrate. *Id.* Warrantless searches are presumptively unreasonable under the state and federal constitutions. *Commonwealth v. McCree*, 592 Pa. 238, 924 A.2d 621, 627 (2007).

"Probable cause" is a practical, non-technical concept. *Commonwealth v. Coleman*, 574 Pa. 261, 830 A.2d 554, 560 (2003). To establish probable cause, the Commonwealth must demonstrate that a search meets the requirements of the 'totality-of-the-circumstances' test. *Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 655-56 (2010). Pursuant to that test, when presented with an application for a warrant, "[a] magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Jones*, 542 Pa. 418, 668 A.2d 114, 116-17 (1995) (citation and some internal quotation marks omitted).

*Commonwealth v. Barr*, 266 A.3d 25, 39–40 (Pa. 2021). *See also Commonwealth v. Korn*, 139 A.3d 249, 253 (Pa. Super. 2016) (issuing authority must decide that probable cause exists at the time of its issuance and make this determination on facts that are described within the four corners of the supporting affidavit and closely related in time to the date of issuance of the warrant).

In the case *sub judice*, the Affidavit of Probable Cause sets forth the totality of circumstances prompting the affiant, Officer Francis Ludovici of the Bensalem Township Police Department, to apply for a warrant to search the trunk of Appellant's vehicle. At the outset, the Affidavit states that at the time of the July 25, 2021 police-citizen interaction, Officer Ludovici had been a police officer for over four years, during which he had been involved in

hundreds of narcotics investigations resulting in arrests and had received specialized drug and narcotics training from local, state, and federal agencies related to drug identification, vehicle search and seizures, narcotics field test certifications, and interview and interrogations. Affidavit, 7/25/21, at 2.

At approximately 10:31 a.m., Officer Ludovici was driving his patrol car around Street Road and the Lincoln Highway when he observed Appellant operating a vehicle with "heavy window tint" and what appeared to be counterfeit inspection stickers. *Id*. The officer executed a traffic stop of Appellant's vehicle in the area of Street Road and the Pennsylvania Turnpike. *Id*.[7]

Upon addressing Appellant and his passenger, Tiffany Debnam, the officer observed they were overly nervous and avoided eye contact. Appellant's nervousness manifested itself through shaking hands and difficulty concentrating while locating paperwork and speaking to the officer. *Id*.

The Affidavit also notes apparent efforts made by Appellant to mask the odor of marijuana emanating from the vehicle. Specifically, as Officer Ludovici approached the vehicle, Appellant

> immediately placed a 'black and mild' cigarette in his mouth and lit it. At this time, your Affiant observed numerous purposely placed air fresheners throughout the passenger compartment of the vehicle in addition to other masking agents which included cologne, and aerosol cans. Your Affiant believed that he smelled the odor of marijuana combined with the black and mild cigarette

---

[7] Prior to initiating the face-to-face encounter with Appellant, Officer Ludovici verified from his patrol car that the vehicle was registered to Appellant and that Appellant resided in Philadelphia. *Id*.

and overwhelming odor of air fresheners. Boyd was asked about the odor of marijuana and admitted that he does in fact smoke marijuana but did not have a medical marijuana card. Boyd denied having marijuana in the vehicle. Your Affiant knows from his knowledge, training, and experience that these masking agents are often used by subjects who use and/or sell controlled substance(s) to avoid detection by law enforcement.

*Id*.

Officer Ludovici also addresses in his Affidavit what he views as significant information acquired about Appellant's stop at a Bucks County hotel known for drug and firearms crime during his visit to Bucks County. "During the encounter," the Affidavit continues,

> your Affiant asked Boyd routine questions about his itinerary including the origin and destination of his trip. He advised your Affiant that he left the Knights Inn Hotel located at 2707 Lincoln Highway in Bensalem. Boyd said that he was in the process of returning home to Philadelphia PA when he was stopped for the traffic violations.
>
> Your Affiant is familiar with the Knights Inn as being a high crime area. The area of the Knights Inn has been identified as a high crime area based on hundreds of arrests that have been made specifically in firearms violations, narcotics, and other felonious crimes. Additionally, this specific area was designated a high crime area by the federal government.

*Id.* at 2-3.

Relatedly, the Affidavit discusses the officer's awareness that Appellant's route of travel and the location of the traffic stop has been identified as a narcotics "Pipeline" highway:

> Your Affiant is aware of the fact that exit #351 of the PA Turnpike is a major path of travel in the transportation of illicit narcotics and weapons to Philadelphia. US Rt. 1 between the Pennsylvania Turnpike interchange and Philadelphia, PA has been identified as a "Pipeline" highway. A "Pipeline" highway is a roadway that is

frequently used by drug traffickers to transport drugs, proceeds and weapons between two cities.

*Id.* at 4.

The officer's observation of an empty gun holster inside the passenger area, and Appellant's status as a person not to possess a firearm, are also described:

> Your Affiant directed Boyd to roll down all four windows for officer safety reasons. Once the windows were rolled down your Affiant was able to see inside of the vehicle. During the conversation with Boyd, your Affiant immediately observed a black, Galco handgun, pistol holster located on the backseat tucked between the seat and the trunk area.
>
> At that point, your Affiant directed Officer Branford to continue to watch the occupants inside of the vehicle while your Affiant continued to verify the occupant's [sic] identities. Your Affiant contacted 22B and requested to have Boyd queried for a valid firearms license. No record was found and it was discovered that Boyd did have a prior felony conviction for aggravated assault involving a firearms offense which prohibits him from possessing a firearm.

*Id.* at 3.

Finally, the Affidavit states that Officer Ludovici ordered Appellant out of the vehicle and asked him if he was in possession of any weapons, if any weapons were registered to him, and if anyone in his vehicle could have left a weapon inside his vehicle, and he answered "no" to all questions. *Id*. It was at this time, according to the Affidavit, that Appellant claimed he has not carried a weapon since his 1998 aggravated assault conviction and prison sentence for shooting a person. When the officer asked Appellant why, then, was there a gun holster in his car, Appellant replied that the holster was "old,"

- 10 -

and the officer could throw it out. The Affidavit notes that Appellant's disavowal of the holster was incongruous with its presence in the passenger area of a car he currently drove and had owned for only one year. *Id*.

Appellant contends that the search warrant for the search of his vehicle was issued without probable cause because "[n]one of the allegations in the officer's Affidavit, either separately or together, establish a fair probability that contraband or evidence of a crime would be found in the vehicle." Brief for Appellant, at 19. From this initial overview, Appellant takes each basis identified in the Affidavit in isolation and argues that each fails to amount to probable cause to support the issuance of the search warrant.

Specifically, Appellant cites to authority holding that neither furtive movements nor excessive nervousness provides a sufficient basis upon which to conduct an investigatory detention,[8] that the odor of marijuana alone does not amount to probable cause for a search,[9] and that mere presence in a high crime area in no way establishes involvement in criminal activity.[10] Regarding the empty holster lying in plain view in his vehicle, he attempts to distinguish the underlying facts of a 2020 non-precedential decision of this Court, which found probable cause to issue a search warrant from officers' spotting an

_____

[8] Brief for Appellant, at 19-20 (citing *Commonwealth v. Reppert*, 814 A.2d 1196, 1206 (Pa. Super. 2002)).

[9] *Id.* at 20-21 (citing *Commonwealth v. Barr*, 266, A.3d 25, 44 (Pa. 2021)).

[10] *Id.* at 21-22 (citing *Commonwealth v. Key*, 789 A.2d 282, 289 (Pa. Super. 2001)).

- 11 -

empty gun holster in plain view during execution of an arrest warrant in the arrestee's residence.[11] "[I]t is certainly more likely that a firearm will be found in an individual's residence where an empty holster is found than in the trunk of a car[,]" Appellant baldly argues, and he maintains further that the observation of the gun holster in **Evans** was but one of several factors supporting the issuance of a search warrant.

Appellant's argument, however, is founded on a piecemeal assessment of the facts presented in the Affidavit of Probable Cause, wherein he finds each fact insufficient to sustain probable cause. This approach runs counter to the totality of circumstances review of the Affidavit that the magistrate was required to make.

For example, Appellant relies on post-Medical Marijuana Act ("MMA")[12] decisional law holding that the odor of burnt marijuana, alone, supplies insufficient suspicion of criminal activity to contribute to a finding of probable cause. **See Barr**, **supra** (holding because aroma of legally vaporized marijuana can be indistinguishable from aroma of unlawfully smoked

---

[11] **Id.** at 25 (citing **Commonwealth v. Evans**, 229 A.3d 329 (non-precedential decision) (Pa. Super. 2020). In **Evans**, we upheld the suppression court's conclusion that probable cause supported the issuance of a search warrant. The record showed that officers executing the arrest warrant knew defendant was not permitted to possess a firearm, observed the holster inside a transparent drawer from a lawful vantage point, and sought a search warrant based on this observation as well as on observation of other indicia of drug dealing. **Id.** at *8.

[12] 35 P.S. §§ 10231.101-10231.2110.

marijuana, "mere odor" or "plain smell" evidence is insufficient to form probable cause of unlawful conduct).[13]  Officer Ludovici's Affidavit alleged, however, that not only did Appellant's vehicle emit the aroma of marijuana, but Appellant also admitted to the officer that he smokes marijuana and does not possess an MMA card.

Given this admission, we find the present case aligns more closely to cases involving additional facts which, taken together, create sufficient suspicion of criminal activity to create probable cause to search for contraband.  For instance, in **Commonwealth v. Arias**, 286 A.3d 341 (Pa. Super. 2022), a police officer patrolling a housing complex dealing with drug and firearms crime approached a car that bore a license plate registered to another vehicle and was parked for 45 minutes in a location within the complex where cars typically did not park.  The officer immediately detected an odor of marijuana emanating through the open driver's side window, and during

_____

[13] This Court recently explained,

> "Pursuant to the "plain smell" doctrine, Pennsylvania courts historically held that the smell of marijuana alone would provide officers probable cause to conduct a warrantless search. However, the Supreme Court recognized that the 2016 enactment of the [MMA], which created a limited exception for legal possession and use of medical marijuana under certain circumstances, invalidated the "plain smell" doctrine as marijuana is no longer *per se* illegal in Pennsylvania. **Barr**, 266 A.3d at 41."

**Commonwealth v. Arias**, 286 A.3d 341, 348 (Pa. Super. 2022)

his encounter with defendant, the defendant admitted the car smelled like marijuana but denied that he had smoked marijuana and claimed there was no marijuana in the car. When the officer said he had been watching the defendant for the last 45 minutes, the defendant, who appeared inattentive, maintained he had been parked there for only 10 minutes.

Based on the totality of circumstances described above, the officer asked the defendant to alight from the car, but defendant did not comply. After officers eventually removed Appellant from the car, a search of the car revealed a loaded firearm under the driver's seat and a small amount of marijuana. The suppression court subsequently denied the defendant's motion to suppress evidence discovered in the car, the prosecution withdrew charges of possession of marijuana and possession of drug paraphernalia, and a jury found the defendant guilty of, *inter alia*, possessing a firearm without a license.

On appeal, the defendant challenged the trial court's order denying his motion to suppress evidence, which he maintained was discovered based on the odor of marijuana in violation of **Barr**. We disagreed. Applying a totality of circumstances analysis, we reasoned:

> Viewing the totality of the circumstances, we agree with the trial court that the officers had probable cause to conduct the search given the peculiar location of the car where vehicles do not typically park, the time frame that the vehicle was idle in the high crime area, the fact that the vehicle had a license plate registered to another vehicle, the odor of marijuana, Appellant's dishonesty, and his combative behavior. As a result, we conclude the trial court did not err in denying Appellant's suppression motion.

- 14 -

***Arias***, 286 A.3d at 349.

We find ***Arias*** applicable to the present matter. When coupled with the aroma of marijuana and Appellant's admission that the smokes marijuana and possesses no MMA card, the additional presence of: common drug masking agents producing an "overwhelming" fragrance in the car; his lighting an aromatic cigarette as the officer approached the vehicle; his nervous and distracted demeanor; his traveling along a known drug-running corridor in a car bearing counterfeit inspection stickers; his additional admission that he was returning to Philadelphia after having visited the Bensalem Knights Inn, which is designated a high drug and firearm crime location; the presence of a particular gun holster—known by the officer to be sold with a gun included—on his back seat despite his status as a person not to possess a firearm; and his implausible explanation for the presence of the holster, taken together, formed probable cause to believe marijuana and firearms were in Appellant's vehicle.[14]   Accordingly, we conclude the trial court did not err in denying Appellant's suppression motion.

Judgment of sentence affirmed.[15]

_____

[14] With respect to probable cause related to the presence of a firearm, we find the totality of facts also brings the case *sub judice* within the rationale of **Evans**, as Officer Ludovici authored the Affidavit of Probable Cause knowing that Appellant was not permitted to possess a firearm and having observed the holster from a lawful vantage point, while also encountering circumstances indicating Appellant's itinerary involved illicit drugs. ***Id.*** at *8.

[15] Given our disposition of Appellant's first issue, we need not address whether the inevitable discovery doctrine provides an alternate basis upon which to sustain the order denying Appellant's motion to suppress.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/13/2023