J-S42039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
UZZIAH J. WILSON :
:
Appellant : No. 652 MDA 2024

Appeal from the Judgment of Sentence Entered April 11, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001217-2021

BEFORE: LAZARUS, P.J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: DECEMBER 20, 2024**

Appellant, Uzziah J. Wilson, appeals from the judgment of sentence of 9½ to 19 months' incarceration, imposed after a jury convicted him of carrying a firearm without a license, possession of a firearm by a person prohibited, possession of a controlled substance, possession of drug paraphernalia, and driving under the influence of alcohol or a controlled substance. On appeal, Appellant seeks to challenge the trial court's denial of his pretrial motion to suppress evidence. Additionally, Appellant's counsel, William Bispels, Esq., seeks to withdraw his representation of Appellant pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). After careful review, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

Appellant was arrested and charged with the above-stated offenses after the vehicle he was driving was stopped in March of 2021. During the stop,

police officers smelled a strong odor of burnt marijuana, observed marijuana cigars in plain view, and believed Appellant was intoxicated. Appellant admitted he had smoked marijuana shortly before the stop, and then failed field sobriety tests. He was arrested, searched, and found to be in possession of the controlled substance phencyclidine (PCP). Police then obtained a warrant to search Appellant's vehicle, wherein they found marijuana, as well a firearm inside a fanny pack on the front passenger seat.

Prior to trial, Appellant filed a motion to suppress the evidence recovered from his vehicle. After a hearing on June 16, 2021, the court denied Appellant's motion and his case proceeded to a jury trial. At the close thereof, he was convicted of the above-stated offenses. On April 11, 2024, he was sentenced to the aggregate term set forth *supra*.

Appellant filed a timely notice of appeal. In response to the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, Appellant's counsel, Attorney Bispels, filed a Pa.R.A.P. 1925(c)(4) statement of his intent to file a petition to withdraw and an **Anders** brief. On August 28, 2024, counsel filed those documents with this Court, concluding that the following issue Appellant seeks to raise on appeal is frivolous: "Whether the [c]ourt erred in denying the [s]uppression [m]otion in this matter." **Anders** Brief at 6. Appellant filed a *pro se* brief on October 29, 2024.

Attorney Bispels concludes that Appellant's challenge to the denial of his suppression motion is frivolous, and that Appellant has no other, non-frivolous issues he could pursue herein. Accordingly,

> this Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant]. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).
>
> Prior to withdrawing as counsel on a direct appeal under **Anders**, counsel must file a brief that meets the requirements established by our Supreme Court in **Santiago**. The brief must:
>
>> (1) provide a summary of the procedural history and facts, with citations to the record;
>>
>> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>>
>> (3) set forth counsel's conclusion that the appeal is frivolous; and
>>
>> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.
>
> **Santiago**, 978 A.2d at 361. Counsel also must provide a copy of the **Anders** brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief." **Commonwealth v. Nischan**, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, … 936 A.2d 40 ([Pa.] 2007).

**Commonwealth v. Orellana**, 86 A.3d 877, 879-80 (Pa. Super. 2014).

After determining that counsel has satisfied these technical requirements of **Anders** and **Santiago**, this Court must then "conduct a simple review of the record to ascertain if there appear[s] on its face to be

- 3 -

arguably meritorious issues that counsel, intentionally or not, missed or misstated." ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*). However, where the appellant files a *pro se* or counseled response to the ***Anders*** brief, we treat this filing as an advocate's brief and limit our review "to examining only those issues raised and developed in the brief." ***See Commonwealth v. Bennett***, 124 A.3d 327, 333 (Pa. Super. 2015).

In this case, Attorney Bispels' ***Anders*** brief complies with the above-stated requirements. Namely, he includes a summary of the relevant factual and procedural history, he refers to portions of the record that could arguably support Appellant's claims, and he sets forth his conclusion that Appellant's appeal is frivolous. He also explains his reasons for reaching that determination, and supports his rationale with citations to the record and pertinent legal authority. Attorney Bispels states in his petition to withdraw that he has supplied Appellant with a copy of his ***Anders*** brief. Additionally, he attached a letter directed to Appellant to his petition to withdraw, in which he informed Appellant of the rights enumerated in ***Nischan***. Accordingly, counsel has complied with the technical requirements for withdrawal. We will now independently review the record to determine if Appellant's issue is frivolous, and to ascertain if there are any other, non-frivolous claims he could pursue on appeal.

We begin by recognizing the following legal precepts that guide our review in this case:

Our standard of review for an order denying a motion to suppress is well-established.

> We are limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the suppression court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the suppression court are subject to our plenary review.

> Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures by police in areas where individuals have a reasonable expectation of privacy. If a person has a reasonable expectation of privacy in a place, then these constitutional provisions generally require police to obtain a warrant to search the place; a search warrant must be supported by probable cause and issued by a neutral, detached magistrate. Warrantless searches are presumptively unreasonable under the state and federal constitutions.

> Probable cause is a practical, non-technical concept. To establish probable cause, the Commonwealth must demonstrate that a search meets the requirements of the totality-of-the-circumstances test. Pursuant to that test, when presented with an application for a warrant, a magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

- 5 -

*Commonwealth v. Boyd*, 296 A.3d 1270, 1274–75 (Pa. Super. 2023) (cleaned up).

In the instant case, Appellant seeks to challenge the adequacy of the warrant to search his vehicle, contending, *inter alia*, that there was no probable cause to issue the warrant. Thus, we begin by discussing the facts set forth in the affidavit of probable cause filed by the affiant in this case, Criminal Investigator Darren C. Smith (CI Smith) of the City of Reading Police Department.

At the outset, the affidavit states that at the time of the March 17, 2021 police-citizen interaction, CI Smith had been a police officer for over 19 years, with the most recent 11 years serving as a Criminal Investigator in the Vice Unit. ***See*** Affidavit of Probable Cause, 3/17/21, at 1, 3 (Commonwealth's Ex. No. 1).[1] During CI Smith's years of service, he has been involved in hundreds of narcotics and firearms investigations that resulted in arrests and convictions. ***Id.*** CI Smith has also assisted in federal and state prosecutions that resulted in arrests and convictions, and which involved search warrants, surveillance details, undercover drug buys, and purchases of illegal firearms. ***Id.*** at 3. Additionally, CI Smith attested that he is a qualified expert in the field of narcotics, and he has become familiar with the drug culture in the City of Reading. ***Id.*** at 4. CI Smith then listed his knowledge of typical conduct

_____

[1] The affidavit of probable cause is attached to counsel's ***Anders*** Brief. The document bears several numbers at the bottom of each page; for clarity, we cite to the first number listed under the words on the pages of the affidavit.

exhibited by drug traffickers, based on his training and experience. *Id.* at 4-7.

CI Smith next detailed that he sought a warrant for Appellant's vehicle, and alleged that he believed Appellant "ha[d] violated and continue[s] to violate" three crimes: possession of a controlled substance, possession of a small amount of marijuana, and possession of drug paraphernalia. *Id.* at 9. He asserted that there was probable cause to believe that items of contraband related to controlled substances, including "marijuana and related paraphernalia[,]" would be found in Appellant's vehicle. *Id.* at 10, 13. He based that probable cause on the following facts:

> On Thursday March 17, 2021, Berks County Adult Probation Officers (APO), Juvenile Probation Officers (JPO), Pennsylvania State Troopers, Berks County Detectives, Berks County Deputies along with Officers from the Reading City Police Department organized a detail in an attempt to curb a spike in violence; specially [*sic*] firearms violence including numerous homicides, shootings, and assaults involving young offenders with suspected gang affiliation.
>
> At approximately 1248 hours, Officers from the Reading Police Department[] conducted a traffic stop on a gold BMW 5251 bearing Pennsylvania KYK-4592 for an inspection violation under Title 67 / Title 75 in the 400 block of N. 5th Street. The driver was subsequently identified as [Appellant].
>
> It should be noted, [Appellant] is a known violent offender with an extensive criminal history.[2] Officers recently received information from … Berks County Detectives regarding an ongoing

---

[2] Just prior to setting forth these facts, CI Smith listed Appellant's criminal history, including convictions for two felony drug charges in New York in 1996 and 1999; two convictions in 2005 for aggravated assault and carrying a firearm without a license; and a 2017 conviction for possession of a loaded firearm in New York. *See* Affidavit of Probable Cause at 10.

feud with a known Reading Gang Member and[,] in particular[,] information was received that [Appellant] has been acting paranoid. It was learned [Appellant] is usually armed with firearms and in addition [h]as been seen with body armor.

As Officers interacted with [Appellant,] they could smell a strong odor of burnt marijuana coming from within the vehicle. Furthermore, Officers observed several suspected marijuana blunts and small marijuana particulars in plain view inside of the ashtray. Upon talking to [Appellant,] he admitted to the officers[ that] he smoked 15 minutes prior to the incident. Also, [Appellant] admitted the suspected marijuana inside of the ashtray was his.

Under Section 301 of the medical marijuana law (Unlawful use of Medical Marijuana)[, Appellant] was in clear violation of the section and deemed a violation of the Controlled Substance, Drug, Device, and Cosmetic Act (Title 35) by smoking the suspected medical violation [*sic*]. In addition, the marijuana was not kept within its original prescription container.

Furthermore, [Appellant] was in control of a motor vehicle while under the influence of any amount of a controlled substance(s), here being suspected marijuana, a schedule one controlled substance[]. As a result of his possible impairment while driving under the influence of marijuana, [Appellant] was requested to perform a field sobriety test. [Appellant] granted the Troopers permission to perform the test[,] and it was determined … that he failed. [Appellant] was then transported to St Joseph's Hospital to have his blood drawn [for] further testing. Upon searching [Appellant] incident to arrest, Officer[s] … located a glass bottom with a black top that contained a substance that later … tested positive for PCP (Phencylidine or Phenylcyclohexyl Piperidine).

*Id.* at 11-12.

CI Smith stated that, based on his training, experience, and the above-stated facts, he believed that evidence of crimes would be found in Appellant's vehicle. *Id.* at 12. He identified the specific items to be searched for and seized as follows:

1 - Controlled Substances (to include marijuana and related paraphernalia, including but not limited to: packaging material for controlled substances, bags, cutting/mixing agents, razors, mirrors, plates, heat sealing equipment, scales, cellular telephones, and two[-]way communication devices).

2 - Identification of occupants / suspects / defendants of said investigation, including but not limited to: Driver's license, social security cards, welfare cards, employment identification, employment records, birth certificates, insurance cards, registration cards, and personal records.

3 - Any and all items to be used for processing of latent fingerprint evidence.

*Id.* at 13.

In Appellant's motion to suppress, he argued that the search warrant was invalid for the following reasons:

a. The search warrant was issued without probable cause;

b. The affidavit of probable cause was overbroad, thus resulting in a fishing expedition;

c. The affidavit of probable cause included voluminous extraneous information;

d. The affidavit of probable cause provided unnecessary and prejudicial information in the form of [Appellant's] prior criminal record dating back to 1997;

e. The inclusion of [Appellant's] prior criminal record overlaid the probable cause with an unavoidable veil of suspicion, thereby tainting the Magisterial District Justice's neutral and detached assessment of the proffered facts and circumstances[;]

f. The affidavit of probable cause that was placed before the issuing Magisterial District Justice did not include any information from which the justice could determine probable cause existed to search for the entire panoply of items listed in the boilerplate search warrant application. The mere suspicion that [Appellant] was involved in drug trafficking beyond the minutiae observed, *i.e.*, raw marijuana flakes, the burnt marijuana blunt cigars, and the personal use amount of PCP found on [Appellant's] person, does not negate the fact that

- 9 -

the affidavit submitted … offered no facts to establish probable cause of drug trafficking activity.

Omnibus Pretrial Motion, 5/27/21, at 7 (unnumbered; unnecessary capitalization omitted).  Thus, Appellant sought suppression of the evidence obtained during the search of his vehicle.  In particular, he sought suppression of a firearm, which was discovered inside a fanny pack found on the front passenger seat of his vehicle.  *See* Trial Court's Finding of Facts and Conclusions of Law, 8/1/21, at 7 (stating a "black fanny pack style bag was found on the front passenger seat of [Appellant's] vehicle, which Trooper Goodling had seen [Appellant] carrying at 12:45 p.m. earlier that day"); *id.* at 10 (stating "[t]he fanny pack found on the front passenger seat was lawfully searched for controlled substances and paraphernalia" and "[t]he firearm was then found by law enforcement officers at a lawful vantage point, along with other items in the fanny pack").

In denying Appellant's suppression motion, the trial court stated the following:

8. In the instant case, the search warrant set forth C.I. Smith's extensive background and experience to have allowed the Magistrate to rely on his expert opinion to support the search for items of drug possession and paraphernalia listed in the search warrant.

9. The seizure of the firearm was not listed as an item to be seized pursuant to the search warrant.  The firearm was lawfully seized in this instance based upon law enforcement's knowledge that [Appellant] was prohibited from possessing a firearm due to his prior criminal convictions and lack of permission to carry a concealed firearm.  Furthermore, the police must come upon evidence inadvertently, in a place where they have a legal right to be at the time of discovery, and it must be immediately apparent to them that the evidence is of an incriminating character.  *See*

> ***Commonwealth v. Millard***, … 417 A.2d. 1171, 1174 ([Pa. Super.] 1979). ***See also, Commonwealth v. Anderson***, 40 A.3d 1245 (Pa. Super. 2012).
>
> 10. In the instant case, law enforcement officers also came upon the firearm inadvertently and in a place where they had a legal right to be at the time of the discovery of the firearm.
>
> 11. Furthermore, law enforcement officers were lawfully executing a valid search warrant for [Appellant's] vehicle. The fanny pack found on the front passenger seat was lawfully searched for controlled substances and paraphernalia as authorized by the search warrant. The firearm was then found by law enforcement officers at a lawful vantage point, along with other items in the fanny pack.
>
> 12. In the instant case, an examination of the totality of the circumstances contained within the four corners of the search warrant application reveals that the issuing magistrate had a substantial basis for concluding that probable cause existed. As such, [Appellant's] Motion to Suppress evidence is denied.

***Id.*** at 9-10.

Now, in Attorney Bispel's ***Anders*** brief, he claims that Appellant wishes to challenge the affidavit of probable cause for the search warrant on the basis that it "contained paragraphs of boilerplate language pertaining to drug trafficking, seeking to search for cutting and mixing agents, heat-sealing equipment, cellphones, and two-way communication devices." ***Anders*** Brief at 13. Appellant seeks to argue

> that this boilerplate language relating to drug trafficking was not relevant to the charges being faced by Appellant. Rather, it appears that this was an investigation into drug trafficking and the warrant was prepared accordingly. Appellant assert[ed] that, because there is nothing in the affidavit of probable cause for the search warrant that suggests drug dealing, the search warrant [was] impermissibly overbroad and should have been suppressed.

*Id.* at 13-14 (unnecessary capitalization omitted). Appellant reiterates these overbreadth arguments in his *pro se* brief filed in response to Attorney Bispels' petition to withdraw. **See** Appellant's *Pro Se* Brief at 1 (claiming the search warrant was overly broad and improperly "used as a general investigation tool"); *id.* at 3 (contending that the affidavit of probable cause did not set forth sufficient information to establish probable cause to "search for the entire panoply of items listed in the boilerplate search warrant application" and that the affidavit contained "no facts to establish probable cause of drug trafficking activity").

Attorney Bispels concludes that Appellant's claim is frivolous. He explains:

> It is obvious that the police were conducting an investigation that involved Appellant and that the traffic stop was an excuse to stop him in an attempt to find evidence of criminal behavior. This argument is buttressed by the fact that the search warrant application contained extensive language about drug dealing even though there was no evidence of such observed by the police that day. He was charged with simple possession, not possession with intent to deliver.
>
> However, [counsel] believes and avers that these inconsistencies do not amount to reversible error. There was no mention of a firearm in the application for a search warrant. The firearm was found during a search of Appellant's vehicle and would have been found regardless of what the police were searching for. The violations referenced in the search warrant were [driving under the influence] and possession of … PCP, marijuana, and paraphernalia. The warrant was an attempt to find evidence of these crimes. The discovery of the firearm was inevitable, regardless of why the original search warrant was requested.

***Anders*** Brief at 15-16 (unnecessary capitalization omitted).

- 12 -

While we agree with Attorney Bispels' conclusion that Appellant's suppression claim is frivolous, we reach that decision based on the concept of severability, rather than inevitable discovery.

> The doctrine of severance mandates that invalid portions of a search warrant may be stricken and the remaining portions held valid, as long as the remaining portions of the warrant describe with particularity the evidence to be seized. **Where a search warrant authorizes seizure of some items for which there is probable cause and other items for which there is no probable cause, the warrant is not wholly invalid. In such cases, suppression will be required only of the evidence which was seized without probable cause.**
>
> Further, to be severable, a warrant must not be essentially general in character.

*Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa. Super. 2012) (emphasis added).

In *Anderson*, police officers legally entered Anderson's apartment, where they observed marijuana in plain view. *Id.* at 1246. When Anderson refused the officers' request to search his apartment, they obtained a warrant, identifying the items to be searched for and seized as follows:

> Cocaine (crack cocaine), Marijuana, Heroin or any other controlled substance. Any paraphernalia used to manufacture, deliver, dilute, process for distribution, possess, or use any controlled substance. Any records or other documents indicative of distribution. Any indicia of residency. Any property … used or intended to be used to facilitate any violation of the Controlled Substance, Drug Device and Cosmetic Act, including but not limited to currency found in close proximity to, or traceable to the controlled substance.

- 13 -

*Id.* (citation omitted). "After conducting a search, the officers seized, in addition to the marijuana initially discovered, cocaine, a digital scale, Ziploc[] baggies, and baggies with the corners cut off." *Id.*

Anderson filed a motion to suppress the evidence recovered during the search, arguing that there was no probable cause to search for cocaine, heroin, or drug paraphernalia. *Id.* at 1247. In response, the Commonwealth conceded that the warrant only stated probable cause to search for marijuana, but it argued that, because the cocaine and drug paraphernalia were found in plain view during the course of the lawful search for marijuana, that evidence should be admitted. *Id.* The trial court disagreed and granted suppression, after which the Commonwealth appealed. In reversing the trial court's order suppressing the cocaine and drug paraphernalia, this Court stressed that the officers "had a search warrant supported by probable cause to search for marijuana[,]" and that

> [d]uring their legal search for marijuana, they discovered the other seized items, whose criminal nature was readily apparent. There is no argument that they were not lawfully on the property, that they exceeded the scope of the valid portion of the search warrant when they discovered the additional items, or that the incriminating nature of the items was not readily apparent. Thus, the suppression court erred when it granted [Anderson's] motion to suppress the cocaine and paraphernalia.

*Id.* at 1249 (citations and footnote omitted).

The facts of this case are similar to **Anderson**. Here, the search warrant was valid in authorizing a search for marijuana, as CI Smith clearly provided probable cause that marijuana would be found in Appellant's vehicle. Namely,

- 14 -

CI Smith averred that the police officers who stopped Appellant's vehicle smelled a strong odor of burnt marijuana, observed marijuana in plain view in Appellant's ashtray, and Appellant admitted he had smoked marijuana shortly before the stop. Additionally, Appellant failed field sobriety tests and was found in possession of PCP when he was searched incident to his arrest. These facts were sufficient to demonstrate a fair probability that marijuana, or other controlled substances, would be found in Appellant's vehicle.

Moreover, the warrant was particular in listing controlled substances, and specifically marijuana, as items to be searched for. The warrant was also limited in scope to Appellant's vehicle, and the controlled substances to be searched for were related to the crimes under investigation, *i.e.*, possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia. *See Commonwealth v. Rivera*, 816 A.2d 282, 290 (Pa. Super. 2003) (stating "[i]t is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched"); *id.* ("A warrant unconstitutional for its lack of particularity authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize."); *id.* ("A warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation….").

During the course of the officers' lawful search for marijuana, they opened the fanny pack on the front passenger seat, which could have contained drugs. Inside, they found a firearm in plain view. In Appellant's motion to suppress, he made no argument that the stop of his vehicle was illegal, that the officers exceeded the scope of the warrant by searching the fanny pack, or that the incriminating nature of the firearm was not immediately apparent. *See Anderson*, 40 A.3d at 1248 ("[T]he plain view doctrine provides that evidence in plain view of the police can be seized without a warrant," and it "applies if 1) police did not violate the Fourth Amendment during the course of their arrival at the location where they viewed the item in question; 2) the item was not obscured and could be seen plainly from that location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access that item"). Thus, even accepting Appellant's argument that there was no probable cause to search for paraphernalia related to drug distribution, those invalid portions of the warrant were severable from the valid portion permitting the search for marijuana, and did not impact the legality of the seizure of the firearm found in plain view during that search. Consequently, we agree with Attorney Bispels that Appellant's challenge to the trial court's denial of his motion to suppress the firearm is frivolous.

Next, we briefly address several additional arguments that Appellant raises in his *pro se* response to Attorney Bispels' motion to withdraw. First, he argues that "[t]he Commonwealths [*sic*] evidence fail[ed] to establish that

[Appellant] was aware of the firearms [*sic*] presence in the vehicle[,] as the location where they claim they found a firearm does not appear in the affidavit of probable cause…." Appellant's *Pro Se* Brief at 1. Appellant's argument is frivolous. The location where the firearm was ultimately found was not set forth in the affidavit of probable cause because CI Smith had no knowledge at that point that a firearm would be discovered inside the fanny pack in Appellant's vehicle. It is also unclear whether, at the time CI Smith filed the affidavit, that the officers who had stopped Appellant had noticed the fanny pack in the front seat of the vehicle. Moreover, to the extent Appellant is attempting to challenge the sufficiency of the evidence to prove he possessed the gun, he fails to explain how the evidence **presented at trial** was insufficient. "This Court will not act as counsel and will not develop arguments on behalf of an appellant." **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007). Therefore, no relief is due.

Second, Appellant claims that "[t]he probable cause provided in the search warrant application relied upon information without support, to wit: that [Appellant] is a 'known violent offender with an extensive criminal history[']…." **Id.** at 2. We disagree. As discussed *supra*, in the affidavit of probable cause, CI Smith set forth Appellant's prior convictions, which included the violent offense of aggravated assault and multiple other felony crimes. Thus, CI Smith provided adequate information to support his statement that Appellant is a violent offender with an extensive criminal history.

Third, Appellant mentions that he "has a legit[imate] medical marijuana card." *Id.* Even if true, however, the officers who stopped Appellant's vehicle smelled a strong odor of ***burnt*** marijuana, observed marijuana blunts in the ashtray, and Appellant admitted he had ***smoked*** marijuana shortly before the stop. It is illegal to smoke medical marijuana. ***See*** 35 P.S. § 10231.304(b)(1). Thus, Appellant's claim that he has a medical marijuana card does not diminish the probable cause that evidence of a crime would be found in his vehicle.

Finally, Appellant claims that the inclusion of his prior criminal record in the affidavit of probable cause "taint[ed] the Magisterial District Justices [*sic*] neutral and detached assessment of the proffered facts and circumstances." Appellant's *Pro Se* Brief at 3. Appellant cites no legal authority to support that it was improper for CI Smith to include Appellant's prior record in the affidavit of probable cause, especially where Appellant had committed prior drug offenses and the warrant was being sought to investigate drug offenses. Rather than being prejudicial, the information about Appellant's prior criminal history was relevant to the assessment of whether probable cause existed to issue a search warrant. Therefore, this claim is frivolous.

In sum, we conclude that the arguments Appellant seeks to raise herein are frivolous. Accordingly, we affirm his judgment of sentence and grant Attorney Bispels' petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/20/2024