J-S37021-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUAN RAMON SEPEDRO | : | |
| ENCARNACION | : | |
| | : | |
| | : | No. 260 EDA 2025 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered December 16, 2024
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0001108-2022

BEFORE:   DUBOW, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JANUARY 6, 2026**

Juan Ramon Sepedro Encarnacion appeals from the judgment of sentence entered after he was convicted of possession with intent to deliver and related crimes.[1]  He challenges the denial of his motion to suppress evidence obtained during a search of the vehicle he was driving.  We affirm.

On March 25, 2022, Trooper John Stepanski of the Pennsylvania State Police arrested and charged Encarnacion following a traffic stop.  On August 17, 2022, Encarnacion filed omnibus pre-trial motions, including motions to suppress both his statements and physical evidence from the traffic stop.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) (possession of fentanyl with intent to deliver), (16) (possession of fentanyl), and (32) (possession of drug paraphernalia).

The trial court held a suppression hearing on March 28, 2023. The Commonwealth presented the testimony of Trooper Stepanski and introduced a video from the stop into evidence.

On June 21, 2023, the trial court entered an opinion on Encarnacion's suppression motion. The court found the following facts based on the evidence from the suppression hearing:

1. On March 25, 2022, at approximately 11:54 a.m., Trooper John Stepanski of the Pennsylvania State Police, working with the Safe Highway Initiative through Effective Law enforcement Detection (SHIELD) unit, was traveling eastbound on I-78 in Williams Township, Northampton County, and observed an eastbound silver Jeep Cherokee following closely behind a commercial truck.

2. Trooper Stepanski also observed that the Cherokee had an obstructed license plate and it slowed its speed to below the speed limit while also weaving in its lane, encroaching on the dashed line and crossing the fog line.

3. Trooper Stepanski was operating a marked Pennsylvania State Police SUV in full uniform and initiated a traffic stop near the exit ramp for Exit 75 at Morgan Hill, Williams Township.

4. As Trooper Stepanski approached the driver, the driver already had his documents ready to hand them to the officer, which Trooper Stepanski characterized as unusual in his experience.

5. Trooper Stepanski asked the driver to exit the vehicle with his documents and come to the passenger side of the patrol vehicle.

6. Trooper Stepanski asked the driver if he had any weapons and the driver immediately lifted up his shirt to show his waistband.

7. Trooper Stepanski observed a new yellow construction hat on the passenger seat of the vehicle.

8. The driver was also wearing a yellow reflective shirt.

- 2 -

9. [The driver, Encarnacion] stated that he was a carpenter and had been repairing a boat with a friend.

9. The vehicle was a silver Jeep Cherokee with a Rhode Island license plate.

10. [Encarnacion] told Trooper Stepanski that the vehicle was registered to his wife.

11. [Encarnacion] told Trooper Stepanski that he understood he was being pulled over for weaving while driving.

12. Trooper Stepanski testified that because [Encarnacion] appeared to be nervous, he told [Encarnacion] that he could be given a warning.

13. Trooper Stepanski testified that [Encarnacion] had a nervous demeanor, standing back from the window, and had his hands in his pockets.

14. Trooper Stepanski asked [Encarnacion] if there was anything illegal in the vehicle based upon his prior knowledge of [Encarnacion, Encarnacion's] demeanor during the traffic stop, and Trooper Stepanski's observation that [Encarnacion] had two cell phones in the car.

15. [Encarnacion] responded to the question of whether there was anything illegal in the car by saying "you want me to open it?" and Trooper Stepanski confirmed "can I search your car?" and [Encarnacion] replied "yeah you can see, yeah no problem."

16. Trooper Stepanski confirmed whether [Encarnacion] could read English or Spanish and provided [Encarnacion] with a copy of the consent to search form in Spanish.

17. [Encarnacion] confirmed that he understood the form and asked for a pen, reviewed the form and signed it.

18. [Encarnacion] was advised that he could stop the search, which he acknowledged.

19. [Encarnacion] remained standing near the patrol vehicle and was not restrained.

20. Trooper Stepanski and Trooper Brian Konopka searched the vehicle.

21. Trooper Stepanski observed that the plastic backing of the front passenger seat was loose, and when he looked inside the seat back, he could observe a brown paper bag inside the seat.

22. Trooper Stepanski removed the item, which was a kilogram-shaped package of white powder inside a vacuum-sealed bag, inside of the brown paper bag.

23. Trooper Stepanski completed the search of the vehicle and [Encarnacion] was taken into custody and given Miranda warnings.

24. [Encarnacion] stated that he understood the Miranda warnings and when asked if there was anything else in the vehicle, he responded that there was just one kilogram in the seat back.

Opinion, 6/21/23, at 1–4 (numbering in original; record citations and footnote omitted). Additionally, the trial court credited Trooper Stepanski's testimony that he "had prior knowledge that this vehicle was going to be traveling on Interstate 78 with possible suspected contraband." *See id.* at 6 n.4; N.T., 3/28/23, at 11.

The trial court denied Encarnacion's motion, concluding in relevant part that Encarnacion validly consented to a search during the traffic stop.

The case ultimately proceeded to trial on November 18 and 19, 2024. The jury found Encarnacion guilty of the above offenses. On December 16, 2024, the trial court sentenced Encarnacion to serve 90 to 180 months of confinement, concurrent with one year of state probation. No post-sentence motion is included in the record; however, on December 19, 2024, the trial court entered an order denying Encarnacion's motion for reconsideration.

Encarnacion timely appealed. Encarnacion and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

In this appeal, Encarnacion presents two related challenges to the trial court's order denying his motion to suppress evidence:

A. Did the Court commit error by failing to suppress evidence seized during the warrantless search of [Encarnacion's] vehicle while [Encarnacion] was unlawfully detained?

B. Was it error for the Court to fail to suppress evidence seized during a warrantless search?

Encarnacion's Brief at 4.

Encarnacion contends that the video of the stop does not show him following too closely or committing lane violations. He argues that the purpose of the initial traffic stop was complete when Trooper Stepanski told him he would give him a warning. Encarnacion argues that his continued seizure was unlawful, including four minutes later when he consented to a search. He concludes that the ensuing warrantless search was impermissible, and the trial court should have granted suppression.

The Commonwealth argues that Trooper Stepanski's observation of the obstructed license plate was probable cause to initiate a traffic stop; as to the other Vehicle Code violations, "the court was required to accept [Trooper Stepanski's] testimony and give the Commonwealth the benefit of all inferences arising therefrom." The Commonwealth contends that Encarnacion validly consented to a search during the traffic stop. In the alternative, the Commonwealth submits that Trooper Stepanski had reasonable suspicion that Encarnacion was engaged in criminal activity.

An appellate court first reviews a suppression ruling for whether the record supports the trial court's factual findings. *See Commonwealth v. Boyd*, 296 A.3d 1270, 1274 (Pa. Super. 2023). Contrary to the Commonwealth's position, a fact-finding court is not required to credit any testimony or give the benefit of any inferences to one side. However, once a trial court has denied suppression, a reviewing court "may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Id.* (quoting *Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa. Super. 2019)). The reviewing court must then determine the correct application of the law to the factual findings. *See id.*

For constitutional purposes, a traffic stop is a seizure that must be supported by either reasonable suspicion of an offense that requires further investigation or probable cause for a non-investigable offense (like a license plate violation). *See Commonwealth v. Malloy*, 257 A.3d 142, 147–48 (Pa. Super. 2021). A police officer may initiate a traffic stop for a minor violation of the Vehicle Code, even if the stop is "a mere pretext for a narcotics search." *Commonwealth v. Ortiz*, 326 A.3d 942, 946 (Pa. Super. 2024) (citing *Whren v. United States*, 517 U.S. 806, 803 (1996)).

Notably, a traffic stop becomes unlawful if an officer needlessly prolongs it. *Rodriguez v. United States*, 575 U.S. 348 (2015).

> The tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop, and attend to related

safety concerns. Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate that purpose." Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been— completed.

A traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete the mission" of issuing a warning ticket. An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.

Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to the traffic stop." Typically, such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

*Malloy*, 257 A.3d at 149–50 (quoting *Rodriguez*, 575 U.S. at 354) (brackets and ellipses omitted).

However, a police officer may lawfully prolong a traffic stop if the officer has developed a reasonable suspicion that the driver committed another offense. *Commonwealth v. Galloway*, 265 A.3d 810, 815–16 (Pa. Super. 2021). Reasonable suspicion depends on the totality of the circumstances, including seemingly innocent factors, that the officer observed throughout the stop. *Id.* at 814–15.

Here, the record supports the trial court's findings, and the video provides an accurate timeline of the progress of the traffic stop. The stop was valid based on Trooper Stepanski's observations of Encarnacion's driving and the license plate obstruction. We do not conclude that the "mission" of the

stop was complete when Trooper Stepanski told Encarnacion that he could give him a warning. Rather, as the trooper testified, even a warning requires him to enter information into a computer system in the police vehicle.

Furthermore, by the time Trooper Stepanski obtained Encarnacion's consent for a vehicle search, the totality of the circumstances established a reasonable suspicion that Encarnacion was transporting illegal drugs. Trooper Stepanski began the stop with "prior knowledge" that the vehicle would be traveling with contraband.[2] During the stop, Trooper Stepanski observed that Encarnacion had two cell phones, a factor the trooper noted based on his experience. Additionally, Encarnacion had his documents ready even before they were requested, and he had a new hard hat and reflective shirt, all of which Trooper Stepanski suspected to be an attempt to avoid suspicion. While Encarnacion's attire and behavior could be innocent, the combination of factors would be enough to support the trooper's reasonable suspicion to continue to detain him and investigate.

Because Encarnacion provided consent to a vehicle search while he was validly detained, the search itself was lawful. Therefore, the trial court properly denied Encarnacion's motion to suppress evidence, and Encarnacion's appellate issues fail.

Judgment of sentence affirmed.

---

[2] Although Trooper Stepanski did not elaborate on his "prior knowledge," Encarnacion did not challenge it on cross-examination. The record supports the trial court's finding, and we accept it for our analysis.

- 8 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/6/2026