J-A24006-22

2023 PA Super 16

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL THOMPSON | : | |
| | : | |
| Appellant | : | No. 2632 EDA 2021 |

Appeal from the Judgment of Sentence Entered December 13, 2021
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002233-2020

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and SULLIVAN, J.

OPINION BY BENDER, P.J.E.:                **FILED FEBRUARY 7, 2023**

Appellant, Michael Thompson, appeals from the judgment of sentence of 66 to 132 months' incarceration[1] entered following his stipulated non-jury trial conviction of one count of person not to possess a firearm.  His appellate issues both relate to the trial court's denial of his motion to suppress a firearm, which was recovered during an inventory search prior to towing Appellant's vehicle.  Appellant argues that our Supreme Court's decision in ***Commonwealth v. Alexander***, 243 A.3d 177 (Pa. 2020) (holding that Article I, Section 8 does not recognize the full federal "automobile exception" to the

_____

[1] Appellant was initially sentenced on October 29, 2021, to 81 to 162 months of incarceration.  Appellant filed a post-sentence motion for relief on November 5, 2021, and on December 13, 2021, the court entered an order amending the sentence to 66 to 132 months of incarceration.  While the trial court entered an order on December 14, 2021, granting Appellant's post-sentence motion and vacating judgment of sentence, this Court has amended the docket to reflect the resentencing date.

warrant requirement), eliminated the inventory search exception. We disagree and affirm the judgment of sentence.

On July 1, 2020, police and medical personnel were dispatched to an Aamco station at approximately 1:30 p.m., due to an unconscious person in a vehicle. N.T. Suppression, 6/22/21, at 9. When Officer Joseph Vavaracalli of the Marple Township Police Department arrived, EMT personnel were speaking to Appellant, whose vehicle was blocking two or three other cars. *Id.* at 15. Officer Vavaracalli spoke to Appellant, who appeared lethargic, stumbled as he walked, and was slurring his speech. *Id.* at 17, 19. As Appellant was incapable of operating the vehicle, Officer Vavaracalli decided that it would be towed. Per departmental policy, Officer Vavaracalli performed an inventory search of the vehicle to record its contents.[2]

On April 7, 2021, Appellant filed a motion to suppress the evidence, generically arguing that the search violated Appellant's rights under both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. Motion to Suppress, 4/7/21, at 1, ¶6. Following a suppression hearing, the court denied the motion on September

_____

[2] The Commonwealth's brief cites the affidavit of probable cause, which was not entered into the record, as establishing a firearm was recovered. There is nothing in the record indicating from where in the vehicle the firearm was recovered.

7, 2021,[3] and Appellant proceeded to a stipulated non-jury trial to preserve the issue for appeal. Appellant filed a timely notice of appeal and complied with the trial court's order to file a concise statement of matters complained of on appeal. Appellant raises two issues for our review:

> 1. Did the trial court err in denying [A]ppellant[']s motion to suppress when it determined Article 1, Section [8] of the Pennsylvania Constitution and the Supreme Court Decision in **Commonwealth of Alexander** [*sic*], 243 A[.]3d 177 ([Pa.] 2020) does not apply to an inventory search[?] Specifically[,] did the trial court err in ruling that the constitutional protections cited in **Alexander** are not applicable to an inventory search nor is an inventory search subject to the requirements that a warrantless search must have specific exigent circumstances as set forth in **Commonwealth v. Alexander**, **[s]upra**[?]
>
> 2. Did the trial court err in determining that neither a search warrant [n]or exigent circumstances for a warrantless search are not [*sic*] required to conduct an inventory search of an individual's vehicle and as such the Pennsylvania Supreme Court['s decision] in **Commonwealth v. Alexander**, **[s]upra** does not apply in [A]ppellant's case[?]

Appellant's Brief at 4-5.

Appellant's core argument is that because **Alexander** held that the federal automobile exception is incompatible with Article I, Section 8 of the Pennsylvania Constitution, the Court necessarily eliminated the inventory search exception to the warrant requirement as applied to automobiles. The

---

[3] Appellant requested permission to file a brief "within a week," and the trial court set a due date of July 7, 2021, with the Commonwealth having ten days to reply. N.T. Suppression, 6/22/21, at 24-25. The certified record does not contain any such briefs and the docket does not show any corresponding entries. The trial court's order of September 7, 2021 denying the motion referenced "oral argument on August 18, 2021[.]" Order, 9/7/21. The transcript of that proceeding was not ordered.

Commonwealth submits that *Alexander* concerned only investigatory searches for evidence of crime and therefore the inventory search exception remains good law. Whether *Alexander* eliminated the exception presents a pure question of law, and our standard of review is *de novo*. *See Commonwealth v. Pacheco*, 227 A.3d 358, 366 (Pa. Super. 2020), *aff'd*, 263 A.3d 626 (Pa. 2021). An examination of Appellant's argument and *Alexander's* impact, if any, on inventory searches requires a brief discussion of federal law.

Both the Fourth Amendment and Article I, Section 8 prohibit unreasonable searches. Pa. Const. art. I, § 8 ("The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizure[.]"); U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"). The text of each "does not specify when a search warrant must be obtained." *Kentucky v. King*, 563 U.S. 452, 459 (2011). The law is replete with exceptions to the warrant requirement, *i.e.,* a recognition that certain searches may be constitutionally reasonable without a warrant issued by a neutral magistrate.

The inventory search that occurred in this case is one of those exceptions. It is rooted in *Cady v. Dombrowski*, 413 U.S. 433 (1973), which recognized that police officers frequently perform tasks unrelated to criminal investigation.

Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Id.* at 441.

*Cady* involved a drunk off-duty Chicago police officer who crashed his vehicle in Wisconsin. The vehicle was towed to a privately-owned garage. The local authorities went to the garage to search the vehicle based on their belief that Chicago officers were required to always carry their service revolvers. Officers searched the vehicle for the firearm and discovered evidence that ultimately led to a murder conviction.

In determining whether the warrantless search was reasonable, the *Cady* Court deemed two facts significant. The first was that the vehicle "constituted a nuisance along the highway," thus justifying a tow. *Id.* at 443. The second was that the lower courts had made a factual finding that the search was a standard procedure by that police department "to protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands." *Id.* That was important because it established that the officer's motivation was not to look for evidence of a crime; the governmental interest of "concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle" was constitutionally reasonable. *Id.* at 447.

In **South Dakota v. Opperman**, 428 U.S. 364 (1976), the United States Supreme Court announced the inventory search exception relied upon by the Commonwealth in this case and cited **Cady's** rationale. In that case, the police lawfully impounded a vehicle that was illegally parked. At the impound lot, an officer observed personal items in various parts of the car. The officer had lot personnel unlock the door and, using a standard inventory form, began recording the contents, including what was in the unlocked glove compartment. The officer found marijuana in the glove compartment and Opperman was charged with possession. The **Opperman** Court concluded that the search was reasonable as the police "were indisputably engaged in a caretaking search of a lawfully impounded automobile." **Id.** at 375. Like **Cady**, "there [was] no suggestion whatever that this standard procedure … was a pretext concerning an investigatory police motive." **Id.** at 376. Based on **Cady** and other cases involving searches of vehicles that were impounded or otherwise in police custody, the Court determined that these types of searches are reasonable "where the process is aimed at securing or protecting the car and its contents." **Id.** at 373.

**Opperman** discussed two factors that were pertinent to its reasonableness analysis: the "inherent mobility" of a vehicle makes "rigorous enforcement of the warrant requirement … impossible." **Id.** at 367. Additionally, "less rigorous warrant requirements govern because the expectation of privacy with respect to one's vehicle is significantly less than

that relating to one's home or office." *Id.* This reduced expectation of privacy is due to the fact vehicles "are subjected to pervasive and continuing governmental regulation and control[.]" *Id.* at 368. Over time, these two rationales combined to justify the federal "automobile exception." *See Collins v. Virginia*, --- U.S. ----, 138 S. Ct. 1663, 1669–70 (2018) ("The 'ready mobility' of vehicles served as the core justification for the automobile exception for many years. Later cases then introduced an additional rationale based on the pervasive regulation of vehicles capable of traveling on the public highways.") (quotation marks and citations omitted).

In *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014) (OAJC), a plurality of our Supreme Court determined that the federal automobile exception applied in this Commonwealth. *Alexander* overruled *Gary*, holding that the federal automobile exception is incompatible with the protections afforded by Article I, Section 8. As that decision explained, the pre-*Gary* law "recognized an automobile exception, but unlike its federal counterpart, ours was 'limited' in application." *Alexander*, 243 A.3d at 187-88. Following *Alexander*, our state constitution recognizes a limited automobile exception, which "requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." *Id.* at 181.

Appellant maintains that this quoted language is "clear, ... concise and unequivocal." Appellant's Brief at 10. He argues that following *Alexander* a

vehicle is to be treated identically to a home and thus no inventory search is permitted.

> Just as law enforcement could not remove a person from inside or outside of their home who has an active arrest warrant and then before securing the home, conduct an "inventory search" of the home to protect the police from a potential civil claim of missing items, they cannot search a person's vehicle whether as a search incident to an arrest or an inventory search. The law is to protect an individual's rights towards "all" of his possessions and "any" place they may be. There can be no inventory search of a home and there can be no inventory search of a citizen's vehicle.

*Id.* at 13.

Appellant's argument overlooks that the limited automobile exception is doctrinally distinct from the inventory search exception. It is true that to some degree, the United States Supreme Court's adoption of the inventory search exception relied on views concerning the expectation of privacy in an automobile's contents that **Alexander** rejects. But the specific federal automobile exception rejected in **Alexander** requires the presence of probable cause as a baseline requirement; an officer cannot perform a vehicular search under either constitution if probable cause is absent. The "automobile exception" therefore involves a fact pattern wherein the officers are searching for evidence of a crime. As the **Opperman** Court explained, "[t]he standard of probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures." **Opperman**, 428 U.S. at 370 n.5. Thus, while **Gary** and **Alexander** both discuss warrantless searches of a vehicle, the context of the case involves probable cause supporting an investigatory search for evidence of a crime. An inventory

search falls under "community caretaking" and thus does not involve probable cause.

While no reported decision of this Court has squarely addressed the inventory search exception's viability following **Alexander**, other cases have recognized the fundamental point that **Alexander** does not explicitly address other exceptions to the warrant requirement. **See Commonwealth v. McMahon**, 280 A.3d 1069, 1073 (Pa. Super. 2022) ("[The a]ppellant points to nothing in **Alexander** which modified the plain view exception, and we decline to apply **Alexander**."); **Commonwealth v. Lutz**, 270 A.3d 571, 576 (Pa. Super. 2022) ("**Alexander** did not impact its ruling because its decision did not rest upon the analytical underpinnings of the automobile exception to the warrant requirement, but rather upon an application of the plain view and search incident to arrest exceptions to the warrant requirement.") (internal quotation marks and citation to trial court opinion omitted). **See also Commonwealth v. Heidelberg**, 267 A.3d 492, 505 (Pa. Super. 2021) (concluding that any **Alexander** claim was waived due to failure to preserve the argument but concluding in the alternative that "the bags of crack cocaine would have been lawfully – and inevitably – discovered during an inventory search"). Our courts recognize the "axiom that the holding of a judicial decision is to be read against its facts." **Oliver v. City of Pittsburgh**, 11 A.3d 960, 966 (Pa. 2011). The relevant factual context in **Alexander** and **Gary** was a search for evidence of a crime and the corresponding need to

establish probable cause to search.[4]  The case therefore does not eliminate the inventory search exception.

We note that Appellant appears to suggest that this was not a "true" inventory search.  ***Opperman*** recognized that a "probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly when no claim is made that the protective procedures are a subterfuge for criminal investigations." ***Opperman***, 428 U.S. at 370 n.5.  Appellant's argument alludes to this possibility.  Appellant's Brief at 15 ("It's clear from the Officer's testimony that he suspected criminal activity [by Appellant] and he was being arrested on an outstanding warrant.").  The trial court did not make explicit credibility findings in this regard, but its opinion implicitly rejected Appellant's theory. The trial court stated:

> Officer Vavaracalli testified that … Appellant's car in the instant matter, was blocking both the AAMCO Auto's entrance and blocking multiple cars into their parking spots. Officer Vavaracalli had the authority to impound … Appellant's vehicle because, as he testified, … Appellant's vehicle was stopped in such a way that it was impeding the flow of traffic and obstructing a commercial

---

[4] We add that reading the references in ***Alexander*** to "warrantless searches of a car" to govern every search of a car, including non-investigatory searches like this one, produces absurd results.  For example, a consent search is a warrantless search.  "It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." ***Schneckloth v. Bustamonte***, 412 U.S. 218, 219 (1973).  Appellant's logic would have us conclude that a consent search of a vehicle is no longer permitted following ***Alexander***.

business. Officer Vavaracalli was permitted to conduct an inventory search of [Appellant]'s vehicle.

Trial Court Opinion, 2/1/22, at 8. The trial court implicitly credited the testimony that the tow was conducted pursuant to standard police procedures and was not a subterfuge for investigating criminal activity. ***See Commonwealth v. Lagenella***, 83 A.3d 94, 102 (Pa. 2013) ("An inventory search of an automobile is permissible when (1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle."). Both conditions were met and thus the search was lawful.

Finally, it may be the case that some of the analysis in ***Alexander*** regarding a citizen's privacy interests in his or her vehicle undermines the categorical applicability of the inventory search exception. Appellant argues that, following ***Alexander***, a car is on equal footing with a home, and because a home inventory search could not be conducted an automobile inventory search cannot, either. We are not persuaded by this argument. First, the cited example of serving an active arrest warrant serves a criminal purpose and does not fall under the "community caretaking" rationale that supports the inventory search exception. ***Cf. Caniglia v. Strom***, --- U.S. ----, 141 S. Ct. 1596, 1598 (2021) (warrantless search of home was not justified on basis that resident may have been suicidal and a risk to himself or others; "***Cady's*** acknowledgment of these 'caretaking' duties" does not "create[ ] a standalone

doctrine that justifies warrantless searches and seizures in the home"). Second, the inventory search exception does not solely rely on protecting the police from claims against the police. *See Opperman*, 428 U.S. at 378 (Powell, J., concurring) (observing that "three interests generally have been advanced in support of inventory searches: (i) protection of the police from danger; (ii) protection of the police against claims and disputes over lost or stolen property; and (iii) protection of the owner's property while it remains in police custody.").

That said, *Alexander* may well support some limitations on the inventory search exception, as expressed by the dissenting Justices in *Opperman*. *See id.* at 392 (Marshall, J. dissenting) (arguing that, at minimum, an inventory search cannot take place if the car owner declines; "It is at least clear that any owner might prohibit the police from executing a protective search of his impounded car, since by hypothesis the inventory is conducted for the owner's benefit."); *see also Colorado v. Bertine*, 479 U.S. 367, 385 (1987) (Marshall, J., dissenting) (noting that in *Opperman* the vehicle's owner was not present when the vehicle was towed; "In this case, however, the owner was present to make other arrangements for the safekeeping of his belongings[.]") (quotation marks and citation omitted). The *Alexander* Court's rejection of the United States Supreme Court's views on the privacy interests involved in an automobile may well support some limitations on the inventory search doctrine. *See Bertine*, 479 U.S. at 386

("Not only are the government's interests weaker here than in **Opperman** … but respondent's privacy interest is greater.") (Marshall, J., dissenting). Here, however, Appellant argues that **Alexander** simply eliminated the inventory search exception in total.  We thus have no occasion to address these types of arguments.

Judgment of sentence affirmed.

President Judge Panella joins this opinion.

Judge Sullivan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2023