J-S05014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANDY SIMMONS | : | |
| | : | |
| Appellant | : | No. 175 WDA 2022 |

Appeal from the Judgment of Sentence Entered January 13, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008799-2020,
CP-02-CR-0008799-2020

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McLAUGHLIN, J.

CONCURRING MEMORANDUM BY LAZARUS, J.:

**FILED: September 28, 2023**

I concur in the result, but I write separately to note my disagreement with the Majority's analysis.  In particular, I disagree with the Majority's finding that the police officers were authorized to search Simmons' backpack as a search incident to arrest; rather, I would conclude that under the doctrine of inevitable discovery,[1] the officers would have been able to search the backpack through an inventory search.  I also disagree with the Majority's

---

[1] **See Commonwealth v. Bailey**, 986 A.2d 860, 862 (Pa. Super. 2009) ("If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible.  The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct.").

reliance on cases involving vehicle searches. *See* Majority Opinion, ---DATE---, at 5-8 (citing *New York v. Belton*, 453 U.S. 454 (1981)).[2]

The Majority aptly summarizes our standard of review and, thus, I do not do so here. Nevertheless, I note that this Court may affirm on any basis. *Commonwealth v. Moore*, 937 A.2d 1062, 1073 (Pa. 2007) (appellate court may affirm on any basis regardless of whether it is raised by appellee). Indeed, the case law supporting this Court's authority to affirm on any basis has long been fundamental to our jurisprudence. *See Commonwealth v. Allshouse*, 36 A.3d 163, 182 (Pa. 2012) (compiling caselaw history of appellate court authority to "affirm a valid judgment . . . for any reason"). Our Supreme Court has additionally recognized that appellate courts may even raise the doctrine of harmless error *sua sponte* and affirm on that basis. *See id.* at 182 & n.21 (Pa. 2012) (addressing harmless error doctrine and stating appellate courts "may affirm a judgment based on harmless error even if such an argument is not raised by the parties"); *see also Commonwealth v. Hamlett*, 234 A.3d 486, 492 (Pa. 2020) (reaffirming *Allshouse*).

_____

[2] The Majority also cites to other automobile cases including *Commonwealth v. Alexander*, 243 A.3d 177, 181-88 (Pa. 2020), and *Thornton v. United States*, 541 U.S. 615 (2004). *See* Majority Opinion, ---DATE---, at 6-10. All of these cases discuss, and apply to, automobile searches and the contents uncovered pursuant thereto. I disagree that the instant case is analogous as Simmons was neither in, nor operating, a vehicle. Rather, Simmons was on a bench. *See Commonwealth v. Thompson*, 289 A.3d 1104, 1108 (Pa. Super. 2023) (discussing "ready mobility" of automobiles as core justification for searches under "automobile exception") (citations omitted).

As the Majority states, two police officers were on patrol and encountered Simmons, who was on a bench with his backpack. **See** N.T. Suppression Hearing, 6/24/21, at 6. The officers, one of whom was familiar with Simmons, began speaking with him. **Id.** Simmons acted strangely by growling and speaking about COVID-19 and Taylor Swift. **Id.** at 6-7. However, Simmons also spoke with the officers and told them that he had been out of state visiting Brooklyn, but had returned to Allegheny County recently. **Id.** During this interaction, the officers discovered that Simmons had two probation warrants for his arrest, one from Allegheny County, and the other from Westmoreland County. **Id.** at 7. Consequently, the officers placed Simmons under arrest, patted him down, and handcuffed him. **Id.** at 7-8. It was not until after Simmons had been handcuffed that the officers searched Simmons' backpack.[3] **See** N.T. Suppression Hearing, 6/24/21, at 8-9. The police had taken a pocketknife out of Simmons' pocket. **See id.** at 7-9. The police did not testify that Simmons was making any furtive movement or threats. **Id.** at 6-11. Throughout the interaction Simmons made no movements whatsoever towards his bag. **Id.**

It is unclear to me how the officers' safety was implicated where Simmons, a lone individual, was handcuffed, his pocketknife was seized, and there were two police officers present. Indeed, it would require a herculean effort on behalf of Simmons for him to overcome two trained police officers

_____

[3] The officers did not seek, and Simmons did not give, consent to search the bag. **Id.** at 6-11.

and gain access to a backpack, all while handcuffed. Additionally, there was no evidence or testimony that Simmons was acting aggressively, making furtive movements, or doing anything other than acting strangely. *Id.* at 6-7. Under the facts of this case there was simply no officer-safety-related need to search Simmons' backpack. For these reasons, I respectfully disagree with the Majority's analysis regarding the search incident to arrest.

Nevertheless, I concur in the result, albeit under the inevitable discovery doctrine. *See Bailey*, *supra*. Here, Simmons had no fewer than two outstanding probation violation warrants for his arrest. *See* N.T. Suppression Hearing, 6/24/21, at 7. Consequently, the officers were authorized to take Simmons into custody, as they did, and once in custody, the officers could have easily taken the proper steps to log Simmons' bag into inventory and conduct an inventory search,[4] at which time they would have discovered the suboxone. Therefore, I concur in the result.

---

[4] I make no determinations regarding the constitutionality of the jail's or police department's specific inventory policies. Nevertheless, I note that it is routine for police departments and jails to conduct inventory searches of an arrestee's belongings. *See Commonwealth v. Wible*, 293 A.3d 622 (Pa. Super. 2023) (Table); *See* Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).