J-A30021-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| MARQUEZ SMITH | : | |
| Appellant | : | No. 2459 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 19, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0003046-2023

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED JANUARY 21, 2026**

Marquez Smith appeals from the judgment of sentence, an aggregate term of 4 to 8 years' imprisonment, entered in the Court of Common Pleas of Bucks County after he was convicted of possession of a firearm with manufacturer number altered, carrying a firearm without a license, possession of drug paraphernalia, resisting arrest, improper sun screening, driving without a license, and driving with a suspended license[1] at a nonjury trial. On appeal, Smith challenges the denial of his motion to suppress evidence, the constitutionality of the Bensalem Township Police Department's motor vehicle inventory policy, and the constitutionality of Sections 6110.2 and 6106 of the Crimes Code. After careful review, we affirm.

---

[1] 18 Pa.C.S.A. §§ 6110.2(a), 6106(a)(1), 780-113(a)(32), 5104, 4524(e)(1), 1501(a), and 1543(b)(1)(i), respectively.

Smith's convictions stem from an incident that occurred on April 25, 2023, during which officers of the Bensalem Township Police Department initiated a traffic stop of Smith's vehicle, which was parked in a designated fire lane. After discovering that Smith had an outstanding warrant for his arrest and a suspended driver's license, the officers arrested Smith, impounded his vehicle, and conducted a warrantless inventory search of his vehicle during which they recovered a 9 mm Springfield Armor Hellcat from a bag located behind the driver's seat. Upon discovering the firearm, the inventory search was immediately terminated and the officers obtained a search warrant. While executing the search warrant, officers discovered two marijuana grinders located inside the vehicle's dashboard compartment. The Commonwealth subsequently charged Smith with the above offenses.

On October 17, 2023, Smith filed a counseled omnibus pretrial motion to suppress evidence arguing that the officers lacked the requisite legal authority to conduct the warrantless search of his vehicle following his arrest, where the searching officer did not have "reasonable suspicion, probable cause, [Smith's] consent, a warrant, or valid exigent circumstances[.]" Pretrial Motion, 10/17/23, at ¶ 20. On November 29, 2023, the suppression court held a hearing on Smith's motion at which the Commonwealth entered a copy of the Bensalem Township Police Department's written inventory policy and Officer Bryan Hearn's body-worn camera footage, which captured the entire incident, into evidence. *See* N.T. Hearing, 11/29/23, at 11, 16. Based upon

the evidence introduced at the suppression hearing, the court entered the following findings of fact:

1.      On April 25, 2023, Officer Bryan Hearn [] and Officer Francis McColgan [] of the Bensalem Township Police Department conducted a traffic stop on a white Chevy Malibu ("the vehicle") at or near 3131 Knights Road, Bensalem Township, Bucks County, Pennsylvania.

2.      At all times relevant hereto, the vehicle was stopped in a no parking fire lane [at] the entrance to 3131 Knights Road.

3.      At all times relevant hereto, the vehicle was parked in the fire lane approximately five feet past a speed bump, and approximately ten feet from the following warning painted on the blacktop surface: "NO PARKING FIRE LANE."

4.      Upon seeing the stopped vehicle, [Officer] Hearn activated his lights and siren.

5.      [Officer] Hearn searched the vehicle registration and found that the owner of the vehicle, Marquez Smith, had a suspended driver's license and an outstanding warrant for his arrest for simple assault out of the Allentown Police Department.

6.      As [Officers] Hearn and McColgan approached the vehicle, [Officer] Hearn asked Smith to roll down all the tinted windows of the vehicle, and [Officer] Hearn confirmed that the driver, and sole occupant, of the vehicle was the registered owner of the vehicle.

7.      After confirming with the driver that he was the registered owner of the vehicle, [Officer] Hearn opened the driver's door to the vehicle and asked Smith to "just hop out for me."

8.      When [Officer] Hearn opened the driver's door he saw a black shoulder bag on Smith's lap, between Smith's left leg and the door frame.

9.      Smith asked if he was not allowed to park where he was, and [Officer] Hearn told Smith he would explain when Smith got out of the vehicle.

10.    Smith took the black bag in his left hand, reached into the back seat[,] and placed the black bag [in] the rear driver's side compartment.

11.    As Smith held the black bag in his left hand, [Officer] Hearn reached through the open rear window to secure Smith's left arm and ordered him to get out of the vehicle, but Smith did not immediately comply.

12.    After a brief scuffle, [Officers] Hearn and McColgan forcibly removed Smith from the vehicle, laid him on the ground, advised him that he had an active warrant, and placed him in handcuffs.

13.    As [Officers] Hearn and McColgan walked Smith toward their police cruiser, Smith asked a woman standing beside the vehicle to take the keys and to move the vehicle, but [Officer] Hearn told the woman to stay away from the vehicle.

14.    Smith refused to voluntarily get into the back seat of the police cruiser, and [Officers] Hearn and McColgan had to force Smith into the back seat of the cruiser.

15.    After securing Smith in the back seat of the police cruiser, [Officer] Hearn requested a duty tow to impound the vehicle pursuant to Bensalem policy.

16.    Bensalem Township Police Department General Order 7-11, effective March 23, 2016, is titled "Motor Vehicle Inventory" and addresses inventory searches of impounded vehicles. *See* Exhibit CS-1.

17.    General Order 7-11 states: "This General Order will protect and preserve the property of the owner while the property is under the care and custody of the police. Furthermore, it will protect officers and the Department from civil claims or disputes regarding property subject to that inventory. It will also protect police personnel and the community at large from injury or damaged property due to hazardous materials or substances or dangerous weapons within the motor vehicle." [Exhibit CS-1, at 1].

18.    Before the tow company arrived to remove the vehicle from the fire lane, [Officer] Hearn completed an inventory search of the vehicle in accordance with General Order 7-11.

19. [Officer] Hearn began his inventory search in the front driver's compartment of the vehicle, leaned over to search the center console, then moved to the rear driver's compartment and opened the black bag.

20. Upon opening the black bag, [Officer] Hearn saw a firearm and immediately stopped the inventory search and secured the vehicle to obtain a search warrant.

21. [Officer] Hearn testified at the Motion hearing on November 29, 2023 and the court found his testimony to be credible and convincing.

Decision and Order, 12/5/23, at 2-4 (unnecessary capitalization omitted). On December 5, 2023, the court denied Smith's motion, and provided the following conclusions of law:

7. The court concludes, as a matter of law, that General Order 7-11, effective March 23, 2016 (Exhibit CS-1) is a reasonable, standard policy of routinely securing and inventorying the contents of an impounded vehicle.

8. [Officers] Hearn and McColgan lawfully impounded Smith's vehicle after they arrested Smith on the outstanding warrant, when Smith was the only occupant of the vehicle and the vehicle was parked in a no parking, fire lane.

9. Once the vehicle was lawfully impounded, [Officer] Hearn conducted an inventory search of the vehicle in accordance with General Order 7-11, searching in permissible areas such as the driver's compartment, center console, and the black bag Smith moved from his lap/side to the back seat.

10. [Officer] Hearn properly terminated his inventory search and secured the vehicle to obtain a search warrant upon seeing the firearm inside the black bag.

11. The court believes the inventory search was reasonably conducted and was not a subterfuge for a criminal investigation.

Decision and Order, 12/5/23, at 6 (unnecessary capitalization omitted).

On January 23, 2024, the trial court appointed private conflict counsel to represent Smith. On April 19, 2024, Smith filed a second counseled omnibus pretrial motion, challenging *inter alia*, the constitutionality of Bensalem's inventory search policy and Sections 6106 and 6110.2 of the Crimes Code, under both the federal and state constitutions. **See** Omnibus Pretrial Motion, 4/19/24, at ¶¶ 21-25, 26-40. In response, the Commonwealth filed a motion to quash Smith's second omnibus pretrial motion as untimely filed. On August 11, 2024, Smith filed a motion to dismiss his gun related charges. On August 12, 2024, the court held a hearing on Smith's motion to dismiss and entered an order dated August 14, 2024 denying the motion to dismiss the gun related charges; the order was filed the next day. **See** Order, 8/15/24. On August 16, 2024, the court denied Smith's omnibus pretrial motion challenging Bensalem Township's inventory policy. **See** N.T. Trial, 8/16/24, at 5.[2]

On August 19, 2024, the matter proceeded to a stipulated waiver trial, at which the evidence presented at the suppression hearing was incorporated into the record. **See** N.T. Trial/Sentencing, 8/19/24, at 2-3. The court also admitted the Commonwealth's exhibits, i.e., the affidavit of probable cause, the incident reports, and the Pennsylvania State Police certificate of non-licensure, into evidence without objection. **See id.** at 3; **see also** Exhibits C-1, C-2. At the conclusion of trial, the court found Smith guilty of all counts.

---

[2] The trial held on August 16, 2024, related to Smith's charges in an unrelated matter.

The court imposed a sentence of 4 to 8 years' incarceration for Smith's conviction of possession of a firearm with an altered manufacturer number and concurrent sentences of 24 months' probation for resisting arrest and 60 days' incarceration for driving while operating privilege is suspended. The court also sentenced Smith to pay statutory fines and costs for his convictions of improper sun screening and driving without a license and imposed no further penalty for Smith's convictions of carrying a firearm without a license and possession of drug paraphernalia. On September 12, 2024, Smith filed a notice of appeal from his judgment of sentence. Both Smith and the trial court have complied with Pa.R.A.P. 1925. **See** Pa.R.A.P. 1925(a), (b).

On appeal, Smith raises the following questions for our review:

1. Did the trial court err in denying [Smith's] motion to suppress the unlawful detention and search of [his] vehicle that resulted in the recovery of a [handgun] as there was no viable exception to the warrant requirement[?]

2. Did the trial court err in finding that Bensalem Township's inventory policy was constitutional in light of **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020)[?]

3. Did the trial court err in denying [Smith's] motion to dismiss the gun related charges in light of **New York State Rifle & Pistol Assoc., Inc. v. Bruen**, 597 U.S. 1, (2022) and its progeny[?]

Appellant's Brief, at 5 (formatting altered; unnecessary capitalization and suggested answers omitted).

In this first issue, Smith challenges the denial of his motion to suppress evidence obtained from the warrantless search of his vehicle. In his second issue, Smith claims that the court erred in finding Bensalem's inventory search

policy constitutional following our Supreme Court's decision in **Alexander**. Because Smith sets forth related arguments in support of each issue, we address his first and second issues in tandem.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." **Commonwealth v. Boyd**, 296 A.3d 1270, 1274 (Pa. Super. 2023) (citation omitted). When reviewing an order denying a motion to suppress:

> We are limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the suppression court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the suppression court are subject to our plenary review.

**Id.** (brackets and citation omitted).

Smith challenges the warrantless search of his vehicle, alleging that "(1) the seizure and impoundment of the vehicle lacked necessity, as a third party was present and willing to assume custody; and (2) the search of the shoulder bag was neither a valid inventory [search] nor supported by any exception to the warrant requirement." Appellant's Brief, at 12. Smith further contends that

because his vehicle and personal effects were unlawfully searched, "the firearm and derivative evidence should have been suppressed." ***Id.*** at 14.

The following principles guide our review:

The Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution, protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Pa. Const. art. 1, § 8. Generally, law enforcement must obtain a warrant prior to conducting a search; however, there are certain exceptions to the warrant requirement. One such exception[ ] is an inventory search.

The purpose of an inventory search is not to uncover criminal evidence, but to safeguard items taken into police custody in order to benefit both the police and the defendant. In the seminal case of [***South Dakota v. Opperman***, 428 U.S. 364, 369 (1976)] the high Court observed that inventory searches of impounded vehicles serve several purposes, including (1) protection of the owner's property while it remains in police custody; (2) protection of the police against claims or disputes over lost or stolen property; (3) protection of the police from potential danger; and (4) assisting the police in determining whether the vehicle was stolen and then abandoned.

An inventory search of an automobile is permissible when (1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle. In ***Commonwealth v. Henley***, the Pennsylvania Superior Court, citing ***Opperman***, explained:

In determining whether a proper inventory search has occurred, the first inquiry is whether the police have lawfully impounded the automobile, i.e., have lawful custody of the automobile. The authority of the police to impound vehicles derives from the police's reasonable community care-taking functions. Such functions include removing disabled or damaged vehicles from the highway, impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety.

- 9 -

> The second inquiry is whether the police have conducted a reasonable inventory search. An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation.
>
> [**Commonwealth v. Henley**, ]909 A.2d 352, 359 (Pa. Super. 2006) (*en banc*) (citations omitted). A protective vehicle search conducted in accordance with standard police department procedures assures that the intrusion is limited in scope to the extent necessary to carry out the caretaking function.

**Commonwealth v. Lagenella**, 83 A.3d 94, 102-03 (Pa. 2013) (some citations, footnote, quotation marks, and brackets omitted).

First, we must determine whether the officers had lawful custody of Smith's vehicle. Pursuant to Section 3552 of our Vehicle Code, "any police officer may remove or cause to be removed to the place of business of the operator of a wrecker or to a nearby garage or other place of safety any vehicle found upon a highway" if "[t]he person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before an issuing authority without unnecessary delay." 75 Pa.C.S.A. § 3552(c)(3).

> Post-arrest impoundments of vehicles were upheld in the following situations: (1) in the interests of public safety and efficient movement of traffic; (2) where no one claimed ownership of the automobile; (3) where items of value were observed by the police in plain view and the automobile was located in a high-crime area; and (4) pending the obtaining of a search warrant. On the other hand, where a defendant is stopped on the highway for a summary offense, the police have no statutory authority to impound the defendant's vehicle.

- 10 -

*Commonwealth v. Hennigan*, 753 A.2d 245, 256 (Pa. Super. 2000) (footnotes omitted).

Section 3552(c) also permits officers to remove a vehicle "in violation of Section 3353." 75 Pa.C.S.A. § 3352(c)(4). Section 3353 prohibits, *inter alia*, parking "[a]t any place where official signs prohibit parking." 75 Pa.C.S.A. § 3353(a)(3)(ii).

Moreover, Section 6309.2 of our Vehicle Code provides the following:

> If a person operates a motor vehicle ... on a highway or trafficway of this Commonwealth while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, as verified by an appropriate law enforcement officer in cooperation with the department, the law enforcement officer shall immobilize the vehicle ... or, in the interest of public safety, direct that the vehicle be towed and stored[3] by the appropriate towing and storage agent ..., and the appropriate judicial authority shall be so notified.

75 Pa.C.S.A. § 6309.2(a)(1); *see Lagenella*, 83 A.3d at 102 (finding no basis for officers to conduct inventory search pursuant to Section 6309.2(a)(1) where "the Commonwealth failed to introduce any evidence that [officer's] decision to tow [] vehicle was based on public safety").

Relying on Section 6309.2(a)(1), the trial court addressed the first prong of the inventory search analysis as follows:

> Smith does not take issue with the fact that his operating privileges were suspended on April 25, 2023. Nor does he take

---

[3] Our Supreme Court has explained that for purposes of Section 6309.2(a)(1), there is "no distinction between a vehicle that has been impounded and one that has been towed and stored." *Lagenella*, 83 A.3d at 100 (internal quotation marks and footnote omitted).

issue with the fact that he was operating a motor vehicle on a highway or trafficway in the Commonwealth. Therefore, under the motor vehicle code, [Officers] Hearn and McColgan were required to either immobilize the vehicle or, in the interest of public safety, direct that the vehicle be towed and stored. At the time of the stop, Smith's vehicle was stopped in the fire lane at the entrance to an apartment complex. Given the location of the vehicle, it was reasonable for [Officers] Hearn and McColgan, in the interest of public safety, to direct that the vehicle be towed and stored. Therefore, we concluded that the police lawfully impounded the vehicle, satisfying the first prong of the test for a permissible inventory search.

Trial Court Opinion, 1/8/25, at 8 (footnote omitted). We discern no error.

Our review of the record before the suppression court confirms that Officers Hearn and McColgan lawfully impounded Smith's vehicle where Smith, the driver, was arrested on an outstanding warrant, and his vehicle was parked in a designated no-parking fire lane, thereby impeding the flow of traffic. **See** 75 Pa.C.S.A. § 3352(c)(3), (4). As the trial court explained, Section 6309.2(a)(1) provided additional legal authority to impound Smith's vehicle because Smith was driving with a suspended license and it was in the interest of public safety to have the vehicle, which was impeding the flow of traffic, removed from the fire lane.

Smith fails to cite any case law or Vehicle Code provision to support his averment that the officers' authority to impound the vehicle was vitiated by the presence of a third party or that the suppression court erred by failing to "consider whether impoundment was necessary under [the] circumstances." Appellant's Brief, at 17. Rather, Smith relies upon the following provision in Bensalem's inventory policy to support his assertion that Officers Hearn and

McColgan were required to permit the third party to move his unlawfully parked vehicle:

> ### III. Reason for Inventory and Storage Destination
>
> * * *
>
> E. Safekeeping: Duty Tow Storage Lot—If a vehicle is being towed because the driver was arrested and the vehicle creates a traffic hazard, or is being towed for some other safekeeping issue, it will be inspected, inventoried and towed to the duty tow's storage lot. An incident report or supplemental report and a Vehicle Inventory Form must be completed along with a Property receipt if applicable.
>
> > 1. A vehicle may be towed from private property subsequent to arrest using the same procedure as an arrest on public property.
> >
> > 2. When an individual is arrested and **there is no legal cause to seize or impound the vehicle**[,] it can be released to anyone the arrestee designates provided the designated person is present at the scene, is a licensed driver, and is physically and mentally capable of operating the vehicle.

Exhibit CS-1, at 7 (emphasis added). Smith's contention is meritless. Based upon the plain text of the provision, Bensalem police officers are only required to release the vehicle to a designated person, who meets the additional criteria set forth in subsection (E)(2), if the driver is arrested and there is no legal cause to impound the vehicle. As previously discussed, Officers Hearn and McColgan had legal cause to impound Smith's vehicle under Sections 3352 and 6309.2 of the Vehicle Code.

Next, we must determine whether Officer Hearn conducted a reasonable inventory search. Smith argues that the trial court committed reversible error

where it failed to "engage with the heightened protections and standards required by Pennsylvania's Article I, Section 8 jurisprudence post-*Alexander*[,]" and instead, relied on "traditional Fourth Amendment inventory doctrine[.]" Appellant's Brief, at 19. Further, Smith maintains that "[t]he objective circumstances—including the refusal to release the car to a willing third party, the use of the [purported investigatory] search to access a closed container, and the officer's reference to a 'protective sweep' [at the suppression hearing]—clearly suggest an investigatory pretext, which is precisely what *Alexander* forbids." *Id.* (emphasis omitted). Relatedly, Smith avers that Bensalem's inventory search policy is not constitutionally valid because "[i]t does not require documentation of exigent circumstances, third-party alternatives, or property risk, and its implementation in practice fails to protect the privacy interests of the subject parties." Appellant's Brief, at 23.

Smith's contention that Officer Hearn's search was unreasonable and that Bensalem's inventory search policy is unconstitutional appear to be premised upon *Alexander*, in which our Supreme Court addressed the automobile exception to the warrant requirement. The Court held that "Article I, Section 8 affords greater protection to our citizens than the Fourth Amendment" and determined that "the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." *Alexander*, 243 A.3d at 181. However, contrary to Smith's suggestion, the Court's holding in *Alexander* was limited

to the automobile exception and did not nullify or otherwise alter the remaining well-established exceptions to the warrant requirement. *See Commonwealth v. Saunders*, 326 A.3d 888, 902 (Pa. 2024) (*Alexander* addressed the automobile exception to the warrant requirement, not the distinct plain view exception (or any other exception, for that matter).") (citations omitted). Particularly relevant to the case *sub judice*, when specifically addressing the viability of the inventory search exception post-*Alexander*, this Court has recognized that "the limited automobile exception is doctrinally distinct from the inventory search exception[,]" and determined that *Alexander* "does not eliminate the inventory search exception." *Commonwealth v. Thompson*, 289 A.3d 1104, 1110 (Pa. Super. 2023) (explaining that "[a]n inventory search falls under 'community caretaking' and thus does not involve probable cause."). Accordingly, insofar as Smith suggests that *Alexander* altered our inventory search exception analysis or imposed heightened requirements for assessing the reasonableness of a police department's standard inventory search procedures, his arguments fail.

Rather, in determining whether the Commonwealth has established that an inventory search was conducted "for the purpose of taking an inventory of the car and not for the purpose of gathering incriminating evidence[,]" the suppression court must consider "the scope of the search, the procedure utilized in the search, whether any items of value were in plain view, the reasons for and nature of the custody, the anticipated length of the custody,

and any other facts which the court deems important in its determination."

***Commonwealth v. Hennigan***, 753 A.2d at 256 (citation omitted).

The trial court addressed the second prong of the inventory search analysis as follows:

> The second prong of the permissible inventory search test is whether the police acted in accordance with a reasonable standard policy of routinely securing and inventorying the contents of an impounded vehicle. In this case, we found [that Officers] Hearn and McColgan acted in accordance with General Order 7-11 which is a reasonable standard policy. General Order 7-11 was offered and admitted, without objection, at the suppression hearing and is included in the record as Exhibit CS-1. General Order 7-11 clearly sets forth the policy behind, and the purpose of, the General Order. Likewise, General Order 7-11 defines key words and phrases used in the document. General Order 7-11 then provides a detailed description of how the vehicle inspection and inventory is to be completed, the reason for the inventory, information about various storage locations, documentation required, and the procedures for release of the vehicle from the storage facility. Important to our analysis was the fact that General Order 7-11 sets forth the scope of the inventory and provides limitations designed to protect the owner's rights. Specifically, we considered the following limitation in reaching our conclusion that General Order 7-11 is reasonable:

> > When in the course of conducting an inventory and inspection of a motor vehicle, an officer discovers any evidence of a crime and/or other instruments of illegality and, at that point there is sufficient probable cause to believe a crime has been committed and that further evidence or fruits thereof may be found in the motor vehicle, the officer must stop the inventory and contact, as soon as practicable, the duty or on-call Assistant District Attorney to discuss securing a search warrant. Otherwise, the officer will continue the inspection and inventory of the motor vehicle as set forth within this General Order.

> [Exhibit CS-1, at 4].

[Officers] Hearn and McColgan followed General Order 7-11. [Officer] Hearn described how he performed the inventory search. He took inventory of everything in plain view, then opened the center console. When he opened the shoulder bag Smith had placed on the rear driver's seat[, Officer] Hearn saw a firearm. Pursuant to General Order 7-11, as soon as [Officer] Hearn saw the firearm, he "notified Officer McColgan and then [] immediately stopped the search and secured the car for a search warrant." [N.T. Hearing, 11/29/23, at 15.] All of this was captured on [Officer] Hearn's body[-]worn camera. After hearing the testimony of [Officer] Hearn, watching his demeanor while testifying, and viewing the body camera, it was clear that [Officers] Hearn and McColgan acted in a reasonable and careful manner, and were in full compliance with General Order 7-11.

Trial Court Opinion, 1/8/25, at 8-9 (record citations omitted). We discern no error.

The Commonwealth's evidence established that Officer Hearn conducted the search in accordance with a reasonable, standard inventory policy, in good faith, and in the absence of an investigatory motive. While we note that the Commonwealth did not introduce an inventory form into evidence, the footage from Officer Hearn's body-camera clearly shows that Officer Hearn completed a form and documented the items he observed both in plain view and in the vehicle's center console, including a hat, phone charger, wallet, and cologne, prior to opening the bag containing the firearm. **See** Exhibit CS-1, at 15:10-17:05. Thus, Smith's assertion that "an inventory form was not completed nor was anything of value noted" is belied by the record. Appellant's Brief, at 22.

Therefore, we discern no error in the court's denial of Smith's motion to suppress based upon its determination that the search and seizure of Smith's

vehicle were lawful pursuant to the inventory search exception to the warrant requirement. Accordingly, Smith's first and second issues do not merit relief.

In his third issue, Smith challenges the trial court's denial of his motion to dismiss the charges brought pursuant to Sections 6110.2(a) and 6106(a)(1) of the Crimes Code. Specifically, Smith argues that these charges "run[] afoul of the U.S. Supreme Court's Second Amendment framework set forth in **Bruen**, which requires the government to justify firearm regulations based on historical tradition." Appellant's Brief, at 24. Smith contends that because the government failed to satisfy its burden, the trial court's decision should be reversed. **See id.**

Smith has waived this issue for our review. "The fundamental tool for appellate review is the official record of the events that occurred in the trial court." **Commonwealth v. Harlan**, 208 A.3d 497, 501 (Pa. Super. 2019) (citation omitted). Accordingly, "[o]ur law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." **Id.** (citation omitted).

> With regard to missing transcripts, the Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal. Pa.R.A.P.1911(a)[.] When the appellant or cross-appellant fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review. It is not proper for either the Pennsylvania Supreme Court or the Superior Court to order transcripts nor is it the responsibility of the appellate courts to obtain the necessary transcripts.

***Commonwealth v. Stauffenberg***, 318 A.3d 399, 410 (Pa. Super. 2024) (case citations omitted).

As noted by the trial court in its 1925(a) opinion, and confirmed by our review of the record, Smith failed to request the transcripts from the hearing held on August 12, 2024, during which the court heard argument on his motion to dismiss the firearm charges. ***See*** Trial Court Opinion, 1/8/25, at 10. Consequently, the transcript from the proceedings is not a part of the certified record. Smith's failure to include this transcript is particularly problematic based on the specific constitutional challenge he raises on appeal. Specifically, we are unable to determine the merit of his claim that the Commonwealth failed to satisfy its burden of justifying the firearm regulations at issue at the hearing "by demonstrating that [the regulations are] consistent with the Nation's historical tradition of firearm regulation." ***Bruen***, 597 U.S. 1, 24.

Therefore, by omitting the necessary transcript from the certified record, Smith has waived his ***Bruen*** challenges for our review. Accordingly, Smith's third issue does not merit relief.

For the foregoing reasons, Smith is not entitled to his requested relief, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>1/21/2026</u>